A. C. PARADIS COMPANY

*vs.*

H. W. MAXIM CO., INC.
MARGUERITE D. MAXIM
JOSEPH COOK AND FIRST FEDERAL SAVINGS AND
LOAN ASSN.

Androscoggin.  Opinion, October 10, 1952.

*Brann & Isaacson,* for plaintiff.

*Clifford & Clifford,*
*W. A. Trafton, Jr.,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J. This is an appeal from a decree in equity in consolidated proceedings to establish statutory building liens. The decree was entered following the dismissal of the case without prejudice upon an appeal improperly taken from findings and not from a decree. 148 Me. 43, 87 A. (2nd) 666.

The single justice held that the plaintiff, a subcontractor, had a valid lien with priority over the appellant's second mortgage. The only issue presented in this appeal is: Did the subcontractor waive its lien, otherwise admittedly valid? If the lien was waived or lost, as the second mortgagee contends, then the single justice erred in his decree. If, however, the subcontractor, as it urges, agreed only to subordinate its lien to a certain first mortgage and so did not waive its lien against the premises, then the decree stands. The answer depends upon the meaning of the signed agreement which reads:

> "Know All Men By these Presents, that I/we, the undersigned, in consideration of one dollar and other valuable considerations paid to me/us, the undersigned, by the First Federal Savings and Loan Association, of Lewiston, Maine, the receipt whereof is hereby acknowledged, and for the further consideration of the said First Federal Savings and Loan Association, underwriting a mortgage on the land and buildings owned by *Marguerite D. Maxim* located at *524 Main* Street, *Lewiston*, Maine, do hereby and remise said First Federal Saving and Loan Association and said *Marguerite D. Maxim* of and from all claims of every kind and nature, particularly for any and all lien claims the undersigned now has or may have against the said First Federal Savings and Loan Association and the said property owned by said

*Marguerite D. Maxim* as a result of work and labor done and materials furnished in the erection, altering or repairing the said property at said number *524 Main* Street, said *Lewiston, Maine.*

Dated this *23rd* day of *September,* A. D. *1949* In witness whereof I/we have hereunto set my/our hand and seal.

*A. C. PARADIS CO.*     (SEAL)

Witness:
*H. W. Maxim*             *A. C. Paradis Treas."*

In reaching a decision we must keep in mind that one who seeks to destroy a validly created lien must show that the lien claimant knowingly surrendered or waived his claim. *Jones on Liens,* 3rd Ed. Sec. 1500. Our court has said:

"But in this case the plaintiff denies that any notice was given him that he must look to the defendant alone. The statute gives to the laborer a lien. It is for the claimant to prove that he has knowingly surrendered or waived such lien. This the evidence fails to show. It does not even show that the question of an abandonment of lien was distinctly presented for his consideration." *McCabe* v. *McRea, Ship Empire, and Thompson,* 58 Me. 95, at 99

The principle stated above so effectively in the case of a laborer's lien upon a ship applies with equal force to the builder's lien in the instant case.

The parties whose interests must be considered in this appeal are:

1. The plaintiff, A. C. Paradis Company, a subcontractor.

2. The defendant, H. W. Maxim Co. Inc., the main contractor and indebted to the subcontractor.

3. The defendant, Marguerite D. Maxim, owner of the premises on which the lien is claimed.

4. The defendant, First Federal Savings and Loan Association, sometimes called the Bank, holder of a first mortgage on the premises.

5. The defendant, Joseph Cook, appellant, holder of a second mortgage on the premises.

From the agreement alone the intention is obvious that a proposed mortgage by the Bank should be a lien on the premises with priority over the plaintiff's lien for charges both to the date of the financing and in the future as well. No question arises on this score. This intent can be given effect either by the complete destruction of the lien or by the subordination of the lien to the new mortgage.

Did the agreement act as a waiver of the plaintiff's lien against the interest of the owner of the premises? If so, plaintiff was left with his claim against the contractor without the security of the premises. Clearly any lien against the premises, whatever its priority, and whether builder's lien or mortgage, is a charge against the interest of the owner. Therefore, if the plaintiff's lien was waived or lost against the owner it would not remain in existence against the interest of the appellant second mortgagee.

The words of the agreement "remise—Marguerite D. Maxim," and "property owned by said Marguerite D. Maxim" can, in our view, be construed consistently with an understanding (1) either that the plaintiff's lien would be subordinated to the proposed mortgage or (2) that the plaintiff would thereafter look to the contractor for its pay and not to the premises for security.

Surely such an agreement on its face does not prove that the lien claimant "has knowingly surrendered or waived such lien" to use the words of the *McCabe* case, *supra*. We must look further among the surounding circumstances to ascertain the meaning truly to be given to the agreement.

We quote from the findings of the single justice as follows:

> "As between the claimant and defendants First Federal Savings and Loan Association and Marguerite D. Maxim, the intent of the instrument is clear. It releases both of them from any present or future lien claims that the plaintiff may have against the premises. Its effect is as stated. It allowed the property at 524 Main Street to be burdened by the mortgage of the First Federal Savings and Loan Association, clear of the defendant's right to a lien. It is not a release of liens in general terms made to and for the benefit of the world at large. It names names, and these names are First Federal Savings and Loan Association and Marguerite D. Maxim. The instrument falls in the category of restricted waivers and must be construed as giving priority to the mortgage of the First Federal Savings and Loan Association alone."

The second sentence in the quotation above calls for explanation. Taken alone and apart from its context it would seem to be a finding that the plaintiff had agreed that it had no lien whatsoever against the premises. As we have seen the plaintiff could not retain the security of a lien on the premises with priority over the second mortgagee and at the same time agree that there was no such claim against the property ahead of the owner. Taken in its entirety, however, the findings of the single justice make it clear that he did not have such a general release in view but intended to set forth, as his decision shows, that the validly created lien was not destroyed but remained ahead of the appellant's second mortgage.

The circumstances surrounding the agreement point to the construction that the parties intended to subordinate the plaintiff's lien to the proposed mortgage and not to destroy the lien. Prior to the execution of certain mortgages

to the Bank and to the appellant Cook, on September 15, 1949 the situation with respect to the claims of the plaintiff, the Bank and the appellant, were as follows: (1) A valid lien of the plaintiff for labor and materials furnished commencing on July 21, 1949; (2) a first mortgage from the Maxim Real Estate Co. Inc. to the Bank dated May 2, 1949 in the amount of $5,600; (3) a second mortgage from Marguerite D. Maxim, the owner, to the appellant Cook dated May 4, 1949 in the amount of $2,500. It is of no consequence whether the plaintiff's lien ranked before or after either the first or second mortgages inasmuch as both were later discharged.

On September 15, 1949 Marguerite D. Maxim, the owner, executed a first mortgage to the Bank in the amount of $15,000. On the same day she executed a second mortgage to the appellant Cook in the amount of $15,000 to secure money previously advanced in the amount of $12,000 on or before July 1, 1949, and in the amount of $3,000 advanced on or before July 30, 1949.

On September 21st the Bank executed a discharge of the Maxim Real Estate Co. Inc. first mortgage of May 2, 1949. On the following day there were recorded in the Registry of Deeds the discharge of the Maxim Real Estate Co. Inc. mortgage, a discharge not dated of the May 4, 1949 second mortgage from the owner to the appellant Cook, and also the new first and second mortgages.

On September 22nd the Bank advanced $5,684.98 to the owner, Marguerite D. Maxim, which from the amount we may believe was the balance due on the first mortgage of May 2, 1949. On September 23rd it paid $9,315.02 to Marguerite D. Maxim and several subcontractors. The two sums total $15,000. On the same day the agreement in question was executed by the plaintiff and under that date it received a check from the Bank drawn to the order of the

owner-mortgagor and the plaintiff in the amount of $500. At the time of receiving the $500 payment there was due the plaintiff from the contractor the amount of $615.10.

Subsequent to this payment the plaintiff furnished additional labor and materials which resulted in the lien claim, with validity unquestioned unless waived, in the amount found by the single justice to be $2,051.56.

Henry W. Maxim was the president and treasurer of the contractor and the husband of Marguerite D. Maxim, the owner. Surely he knew that the second mortgage of May 1949 to the appellant Cook had been discharged, and that a new mortgage of $15,000 had been given by his wife to the appellant to cover previous advances. He was interested in obtaining money from the Bank through the new financing to pay obligations of his Company, the contractor. Such was the undoubted purpose of the $15,000 first mortgage to the Bank. The work was not completed and much remained to be done, at least in so far as the plaintiff was concerned. This was known to Mr. Maxim, the contractor, Mrs. Maxim, the owner, and to Mr. Cook the second mortgagee. All that the Bank required to make its $15,000 first mortgage a valid first lien on the property was the subordination of building liens thereto, together with a discharge of the second mortgage of May 1949.

Mr. Maxim, whom for our purposes we will call the contractor, in obtaining the agreement made no mention of the appellant's second mortgage to Mr. A. C. Paradis, business manager of the plaintiff. The talk was about new money from the Bank. Indeed Mr. Paradis says that at no time did he ever know there was a mortgage held by Mr. Cook.

On the appellant's theory the plaintiff subcontractor in executing the agreement gave up all right to the security of the property for the labor and materials furnished then and

later by it and relied solely upon the credit of the contractor. As a result of this release the second mortgagee is thus enabled quietly to slide into a position of security ahead of the plaintiff who has added substantial value to the property. Without knowledge of the agreement executed by the plaintiff, for the new second mortgage was executed prior to the date of the agreement, and without the advance of a dollar to the owner or to anyone on her account on the strength of a release of the lien, the appellant on his theory seeks to advance from a position behind the plaintiff to a position ahead of it. Indeed the appellant goes further for he seeks not merely to alter priorities, but to destroy any lien of the plaintiff.

This is not the case of waiver of liens by a contractor "to whom it may concern" and upon which waiver the owner and others are expected to rely. If in this instance it could be shown that Cook discharged his second mortgage given in May 1949 and took the second mortgage of September 15 in reliance upon the fact that the plaintiff had released any right to a lien, then the principle of waiver by estoppel would be the subject of discussion. The appellant, however, offers not the slightest evidence that such was the case. He simply seeks to take advantage of a lien claimant's willingness to assist in the raising of money to the mutual advantage of the contractor, the owner, and other lien claimants by the subordination of its lien to proposed new financing. There is no reason, in our view, why the lien claimant should be deprived of the benefit of his lien with priority over the second mortgagee by the giving of such an agreement.

The agreement as the single justice pointed out is not in the same category as that in *Townsend* v. *Barlow,* 101 Conn. 86, 124 A. 832, as follows:

"have waived and relinquished and do hereby waive and relinquish all liens and claims of liens we now

have or hereafter may have (upon the land and buildings in question) for labor done and materials furnished for the construction and erection of said buildings."

In that case it is to be noted that reliance was placed upon the waiver by the party who claimed that the lien was destroyed. For statement of the general rule see 36 Am. Jur. 137, and 57 C. J. S. 792, 803 *et seq.*

*Appeal dismissed.*

*Decree affirmed with additional costs.*