**KING PIN MOTOR LODGE, INC.,**
Defendant-Appellant,

v.

**D. J. CONSTRUCTION CO., INC.,**
Plaintiff-Appellee.

No. 3–580A152.

Court of Appeals of Indiana,
Third District.

March 2, 1981.

Bill D. Eberhard, Jr., Richard K. Muntz, P. C., LaGrange, for defendant-appellant.

Philip C. Barker, Hartzog, Barker, Hepler & Saunders, Goshen, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

King Pin Motor Lodge, Inc. appeals the trial court's judgment and an order foreclosing a mechanic's lien held by D. J. Construction Co., Inc. The issues raised by King Pin are:

(1) whether the trial court erred in determining that D. J. Construction had not waived its right to hold a mechanic's lien;

(2) whether D. J. Construction was estopped from asserting a claim for more than $60,000; and

(3) whether the trial court erred in re-opening the case on its own motion for presentation of additional testimony.

Donald Schrock was president of D. J. Construction and vice president of King Pin. D. J. Construction supplied materials and furnished labor for the construction of various improvements on King Pin's real estate. Prior to beginning the work D. J. Construction estimated that the improvements could be completed for $54,000. D. J. Construction issued a general contractor's statement to the Salem Bank and Trust Company in which it also estimated that the cost would be $54,000. D. J. Construction also executed a waiver of mechanic's lien in which it estimated the completion cost would be $60,000.

The bill submitted to King Pin for the project totaled $88,618.80. King Pin paid $50,677.32. D. J. Construction timely filed its notice of intent to foreclose a mechanic's lien and later filed a complaint to foreclose the lien. The trial court entered judgment against King Pin for the principal sum of $37,941.48 plus $2,500 in attorney's fees. The trial court also entered an order to foreclose the mechanic's lien.

King Pin contends that the trial court erred in foreclosing D. J. Construction's mechanic's lien because the lien had previously been waived. King Pin relies on an instrument entitled "Waiver of Mechanic's Lien" addressed to the Salem Bank and Trust Company and signed by Don Schrock as president of D. J. Construction. D. J. Construction on the other hand argues that the instrument was intended only to be an agreement to subordinate its claim in favor of the bank's mortgage. D. J. Construction also asserts that King Pin cannot take advantage of the instrument because King Pin was not a party to its execution.

Research has revealed no Indiana authority concerning the effect of a waiver of mechanic's lien addressed to a third party. Both parties in this case refer the court to *A. C. Paradis Co. v. H. W. Maxim Co., Inc.* (1952) 148 Me. 218, 91 A.2d 485. That case concerns the effect of an ambiguous instrument addressed to both the bank and the landowner. The Maine Supreme Court found that the words of the instrument could be interpreted as either a subordination agreement or a waiver of mechanic's lien. In resolving the ambiguity, the court looked to the circumstances surrounding the execution of the instrument and ruled that it was intended to operate as a subordination agreement. 91 A.2d at 487–488.

There is no ambiguity in the instrument at issue in the present case. The instrument states:

"The undersigned [D. J. Construction], in order to induce the Bank to loan monies to the Owner and in consideration of the making of any such loan, whether such loan is being made now or in the future by the Bank to the Owner, does hereby:

1. Agree that the Bank's mortgage on the Real Estate, including the building(s) and any other improvements thereon, shall be a first and prior lien thereon securing all loans by the Bank to the Owner in connection with the erection, altering or repairing of such building(s) and improvements on said Real Estate for which project the undersigned is furnishing labor and/or materials.

2. Waive and relinquish irrevocably any and all right to acquire, hold, claim or enforce a mechanic's lien on said Real Estate for any and all labor and/or materials furnished or to be furnished by the undersigned in the erection, altering or repairing of the building(s) or improvements on the Real Estate.

3. Waive and relinquish irrevocably any and all right to furnish or deliver to the Owner any 'Preliminary Notice', or to file, in the appropriate County Recorder's Office, a verified notice of intention to hold a mechanic's lien upon the said Real Estate for any unpaid amount due for labor and/or materials furnished or to be furnished by the undersigned for such erection, altering and repairing of the building(s) or improvements on the Real Estate.

4. Agree that no mechanic's lien shall attach to the Real Estate by reason of any and all labor and/or materials furnished or to be furnished by the undersigned.

5. Agree that in lieu of any mechanic's lien, the undersigned will hold the Owner personally responsible for any amount due for labor and/or materials furnished or to be furnished by the undersigned in connection with said erection, altering or repairing of the building(s) or other improvements on the Real Estate."

It is obvious that the instrument contains both a subordination agreement and a waiver of the mechanic's lien.

■ The waiver is not ineffective in regard to King Pin because it is addressed only to the bank. The record indicates that three instruments were executed with the bank on October 5, 1967. A "General Contractor's Statement" and "Waiver of Mechanic's Lien" were signed by Schrock as president of D. J. Construction. An "Affidavit as to General Contractor-Subcontractors and Materialmen" was signed by Schrock as a member of the Board of Directors of King Pin. All of the instruments were executed as part of a single transaction in which the bank loaned money to King Pin for the construction project. Under these circumstances the waiver is effective as to King Pin. The court's order foreclosing the mechanic's lien must be set aside.

■ The award of attorney's fees must also be set aside. As stated above, D. J. Construction does not have a valid mechanic's lien. Attorney's fees may not be awarded to a mechanic seeking to enforce an invalid lien even though he may otherwise be entitled to damages for breach of contract. *Froberg et al. v. Northern Indiana Construction, Inc. et al.* (filed February 10, 1981) Ind.App. No. 3–1279 A 358; *St. Joseph College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865.

King Pin's other allegations of error pertain not only to the order foreclosing the mechanic's lien, but also to the validity of the judgment upon which the foreclosure was based. These issues therefore must also be discussed.

■ King Pin asserts that D. J. Construction should have been estopped from presenting any evidence of construction costs in excess of $60,000. This argument is based on the following facts: 1) As late as January 1968 Schrock represented to the bank that the cost of construction would be approximately $60,000; 2) Schrock at that time was aware that the costs would be greater; and 3) King Pin relied on Schrock's expertise and representations in its decisions to continue the project.

Initially it should be noted that all the representations made by Schrock were estimates, not final figures. There appears to be no firm price set in any contract, but rather an arrangement to pay on a cost/plus basis.

The record also contains much evidence regarding changes in the project which were requested by King Pin after the initial estimates were given. These changes added considerable costs to the project. D. J. Construction is not estopped from proving additional costs when the costs were caused by King Pin's requests for extras which D. J. Construction had not contemplated when making the original estimates.

■ King Pin argues finally that the trial court erred when it reopened the case for presentation of additional testimony. The additional evidence consists primarily of D. J. Construction's business ledgers showing the costs attributable to King Pin's project.

Indiana Rules of Procedure, Trial Rule 52(B) provides:

"Upon its own motion at any time before a motion to correct errors (Rule 59) is required to be made, or with or as part of a motion to correct errors by any party, the court, in the case of a claim tried without a jury or with an advisory jury, may open the judgment, if one has been entered, take additional testimony, amend or make new findings of fact and enter a new judgment or any combination thereof if

(1) the judgment or findings are either against the weight of the evidence, or are not supported by or contrary to the evidence;

(2) special findings of fact required by this rule are lacking, incomplete, inadequate in form or content or do not cover the issues raised by the pleadings or evidence;

(3) special findings of fact required by this rule are inconsistent with each other; or

(4) the judgment is inconsistent with the special findings of fact required by this rule.

"Failure of a party to move to modify the findings or judgment under this subdivision and failure to object to proposed findings or judgment or such findings or judgment which has been entered of record shall not constitute a waiver of the right to raise the questions in or with a motion to correct errors."

Since the rule would have allowed the trial court to enter judgment in favor of D. J. Construction and later reopen the case for additional testimony if the judgment was not supported by the evidence, it is only logical that the trial court could reopen the case prior to entering a judgment. The court therefore committed no error.

For the above reasons the decision of the trial court is affirmed in part and remanded for proceedings consistent with this opinion.

GARRARD and STATON, JJ., concur.