Darrell CATO and Linda Cato,
Defendants-Appellants,

v.

DAVID EXCAVATING CO., INC.,
Plaintiff-Appellee.

No. 1–1081A311.

Court of Appeals of Indiana,
First District.

May 27, 1982.

Richard H. Adin, Fields & Adin, Professional Corp., Evansville, for defendants-appellants.

Donald R. Wright, Lynn, Wright, Evans & Daly, Evansville, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Defendants-appellants Darrell Cato and Linda Cato appeal from the judgment of the Gibson Circuit Court in favor of David Excavating Co., Inc., on its complaint for foreclosure on a mechanic's lien and on the Catos' counterclaim. We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

During July and August of 1978, the Catos entered into a contract with David Excavating, by its president, Jerry L. David, for certain excavation and construction work at a residential subdivision which the Catos were developing. In August of 1978 a dispute arose over the Catos' payment for the project and David Excavating's compliance with contractual terms regarding the construction of a roadway.

On August 30, 1978, David Excavating filed a notice of intention to hold a mechanic's lien against the property. David Excavating filed its complaint on account and to foreclose the mechanic's lien on December 11, 1978. After obtaining an enlargement of time, the Catos filed their answer and counterclaim on January 23, 1979. David Excavating did not answer the counterclaim until the day of trial, May 21, 1981, when the trial court granted it leave to answer the counterclaim orally. During the trial the Catos orally amended their counterclaim to include a count alleging trespass by representatives of David Excavating who went onto the property and dug holes in the road.

After a trial to the court, judgment was entered in favor of David Excavating on its complaint and it was awarded sums of $3,248 and $1,752. The mechanic's lien was ordered foreclosed and David Excavating was awarded $1,500 in attorney's fees pursuant to that foreclosure. The trial court awarded the Catos $500 on their counterclaim for trespass but nothing on the other allegations of the counterclaim.

## ISSUES

1. Whether the trial court erred in denying the Catos' motion that all allegations of their counterclaim except those regarding damages be deemed admitted for failure to file a timely answer, in granting leave to David Excavating to answer the counterclaim orally on the day of trial, and in denying the Catos' motion for continuance.

2. Whether the notice of intention to hold a mechanic's lien is invalid for failure to state accurately the reason for which the lien was sought.

3. Whether the trial court erred in awarding damages of $500 to the Catos on their counterclaim for trespass.

## DISCUSSION AND DECISION

*Issue One*

The Catos assert that the trial court erred in permitting David Excavating, over their objection, to file its answer to their denominated counterclaim on the day of trial and in then denying the Catos' motion for continuance once the trial court had permitted David Excavating to answer.

David Excavating had filed its complaint on December 11, 1978, and, after an enlargement of time, the Catos filed their

answer and counterclaim on January 23, 1979. A pre-trial conference was held on November 7, 1980, and an order book entry indicates that the court set the cause for trial on May 21, 1981, and set another pre-trial conference for April 10, 1981. On March 24 the Catos filed a motion for summary judgment, which the court set for hearing on April 10. The order book entry indicates that at the April 10 pre-trial conference, both sides successfully moved for publication of depositions, and the trial court heard argument on the motion for summary judgment and then denied the motion. This entry also indicates that a further entry would be furnished. However, none of the order book entries indicates whether David Excavating's failure to answer the counterclaim was discussed at either of the pre-trial conferences or what issues were involved in the Catos' motion for summary judgment.

On the day of trial, before any evidence was introduced, the trial judge stated: "Civil Cause 79 at 79, David Excavating Co., Inc. versus Cato. Show pre-trial conference had. Court indicates rulings. Parties now request they be allowed to make record in reponse [sic] to pre-trial conference." Record at 58. Counsel for the Catos then asked the court to deem all matters in the counterclaim admitted inasmuch as David Excavating failed to respond to the counterclaim. Counsel for David Excavating then said:

"Yes, Your Honor, on behalf of the Plaintiff we've indicated to the Court that by error and omission the counterclaim was in fact not answered. It has been taken as denied by the plaintiff in all respects and discovery has been completed in that respect and at this time we would request leave to dictate to the Court the answer and admission and denial to that counterclaim."

Record at 59. Counsel for the Catos objected to the request, but the trial court overruled the objection and granted David Excavating leave to answer the counterclaim. Counsel for the Catos subsequently requested a continuance for further discovery and trial preparation on the ground that he was not prepared to try the matters on which David Excavating had just then pleaded in answering the counterclaim. This request was denied.

The Catos maintain that their denominated counterclaim was a pleading which was required to be filed by Ind. Rules of Procedure, Trial Rule 7(A)(2), and that the failure to answer within twenty days after service of the counterclaim, Ind. Rules of Procedure, Trial Rule 6(C), constitutes an admission of the allegations of the counterclaim except as to the amount of damages, Ind. Rules of Procedure, Trial Rule 8(D). Consequently, they argue that the only issue before the trial court on the date of trial was the matter of the Catos' damages.

However, as David Excavating points out, Ind. Rules of Procedure, Trial Rule 15(A) permits a party to amend his pleading after the usual time limits by leave of court, "and leave shall be given when justice so requires." Expanding on this rule, the Court of Appeals has said,

"The stated policy of this court and the Supreme Court of Indiana is to freely allow such amendments in order to bring all matters at issue before the court. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. Inasmuch as the rule contains no time proscription, the matter of timeliness is within the trial court's discretion. *Henline, Inc. v. Martin* (1976), 169 Ind.App. 260, 348 N.E.2d 416. The grant or denial of leave to amend is therefore reviewable only for an abuse of discretion and, unless prejudice is shown, it will be presumed there was no error. *Selvia v. Reitmeyer* (1973), 156 Ind.App. 203, 295 N.E.2d 869."

*State Farm Mutual Automobile Insurance Co. v. Shuman,* (1977) 175 Ind.App. 186, 192–93, 370 N.E.2d 941, *trans. denied.*

In addition, Ind. Rules of Procedure, Trial Rule 6(B)(2) authorizes the trial court upon motion, after the time in which an act is required to be done has expired, to "permit the act to be done where the failure to act was the result of excusable neglect; . . . ." In *Snyder v. Tell City Clinic,* (1979) Ind.

App., 391 N.E.2d 623, the plaintiffs filed a motion for default judgment after the defendants had failed for over three months to answer the plaintiffs' amended complaint. Then, two days before the hearing on the motion for default judgment, the defendants filed their answers and a motion for enlargement of time in which to answer the amended complaint. The trial court granted the motion for enlargement of time and accepted the defendants' answers. On appeal, the plaintiffs argued that the trial court should not have overruled the motion for default judgment because of the tardiness of the defendants' answers and the fact that the plaintiffs had already filed a motion for default judgment. In affirming the trial court's action, the Court of Appeals considered the impact of T.R. 6:

> "T.R. 6, provides the court with discretion to permit enlargement of time for pleadings and case law reiterates this discretionary standard. *Clark County State Bank [v. Bennett,* (1975) 166 Ind.App. 471, 336 N.E.2d 663], *supra; Green v. Karol,* (1976) Ind.App., 344 N.E.2d 106. Only an abuse of such discretion would allow this court to overturn the decision in appellees' favor in the trial court, and the standard that 'a default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party.' *Green, supra,* at 111, must be considered.

> "In the case at bar, plaintiffs' prayers for relief were in substantial amounts, there were motions from both parties before the court, and discovery was occurring during the period of defendants' inaction on plaintiffs' amended complaint. Therefore, the trial court acted well within its discretionary standard in allowing defendants' answer to plaintiffs' amended complaint and in denying the plaintiffs' motion for default judgment.

> "As stated in *Green, supra,* at 110: '[T]here is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial

amounts of money, or weighty policy determinations.'" (Our insertion.)

391 N.E.2d at 627.

Although *Snyder* involved a motion for default judgment rather than a motion for a declaration that allegations were admitted by failure to file a responsive pleading, we find the similarity between the two situations to be sufficiently strong to permit us to look to *Snyder* for guidance. In either situation, the granting of the motion would have precluded further litigation of the issues underlying the claimants' pleading.

■ Thus, whether the trial court's acceptance of David Excavating's tardy answer is treated as an amendment of a pleading under T.R. 15(A), *i.e.,* a change from an admission of the allegations of the counterclaim by failure to answer them to a denial of some of the allegations, or as an enlargement of time in which to file an answer, the abuse of discretion standard applies.

Counsel for David Excavating indicated, in requesting leave to answer the counterclaim, that discovery had been completed as if the allegations of the counterclaim had been denied. The record indicates that between the expiration of the twenty-day period for responding to the counterclaim and the day of trial, the Catos filed interrogatories which David Excavating answered, both parties moved for and obtained publication of depositions, and the Catos had unsuccessfully moved for summary judgment. The court in *Snyder, supra,* emphasized the conduct of discovery and the filing of motions during the period in which the answers had not been filed as factors weighing in favor of the trial court's discretionary decision to allow the defendants to answer.

■ The counterclaim contained allegations of breach of contract by David Excavating, of the invalidity of the mechanic's lien, and of slander of title to real estate. The counterclaim thus raised issues of fact which were material to both the complaint and the counterclaim. Furthermore, one

count of the counterclaim prayed for damages of $156,800, clearly a substantial sum. Accordingly, *Snyder v. Tell City Clinic* and *Green v. Karol*, (1976) 168 Ind.App. 467, 344 N.E.2d 106, support the trial court's giving David Excavating its day in court and deciding the counterclaim on its merits.

The Catos assert that allowing David Excavating to file its answer on the day of trial severely prejudiced them in that it was not until then that David Excavating denied it had been paid all sums due it for work performed. Furthermore, they allege that it was not until the day of trial that David Excavating entered of record any denial that it had breached the contract, that the filing of the mechanic's lien was invalid because of the breach of contract, that the foreclosure action was brought maliciously and wrongfully without just cause, or that the Catos were entitled to punitive damages.

However, the record as presented to this court does not indicate that the Catos were caught by surprise by David Excavating's denial of certain allegations of the counterclaim. Those allegations of the counterclaim pertaining to David Excavating's breach of contract and the invalidity of the mechanic's lien would be material to the complaint of David Excavating as well. The parties, by counsel, conducted discovery, met in pre-trial conference, and argued a motion for summary judgment, and yet the Catos purportedly did not expect David Excavating would attempt to deny any of the allegations of their counterclaim. Although the interrogatories, depositions, and motion for summary judgment are not included in the record, David Excavating's answers to the Catos' interrogatories were included in the record as Defendants' Exhibit No. 3. The questions were not reproduced, but the answers give the impression that David Excavating was taking the position that it had fulfilled its contractual obligations until the Catos refused to make any further payment. We note that, although the Catos claimed to be relying heavily on David Excavating's failure to answer their counterclaim as an admission

of liability, the record does not show that they filed a motion for default judgment, which if granted would have given them a judgment on the issue of liability and would have prevented the surprise which allegedly prejudiced them on the day of trial. For these reasons, we cannot say that the Catos have demonstrated prejudice either in the rulings allowing David Excavating to answer the counterclaim on the day of trial or in the denial of the Catos' motion for continuance. The granting or denial of a continuance is also within the discretion of the trial court, *Chambers v. Public Service Company of Indiana*, (1976) 265 Ind. 336, 355 N.E.2d 781; Ind. Rules of Procedure, Trial Rule 53.4, and the ruling will be disturbed only upon a showing of clear and prejudicial abuse of that discretion. *Hinds v. McNair*, (1980) Ind.App., 413 N.E.2d 586.

Trial Rule 6(B)(2) authorizes the trial court to grant a motion for enlargement of time where excusable neglect caused the failure to perform a required act. It appears from the record that a pre-trial conference was held on the day of trial and that the recording of the motion for leave to answer the counterclaim and the Catos' motion that the failure to answer be deemed an admission arose from the conference. The trial court was in a position to know whether David Excavating's neglect to file a timely answer was excusable. The Catos have not presented us with a supplementary statement of the substance of the proceedings in the pre-trial conference as they might have done under Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c), so we are not in a position to determine whether as a matter of law the delay was the result of excusable neglect.

We conclude that the Catos have not demonstrated reversible error in the trial court's allowing David Excavating to answer the Catos' counterclaim on the day of trial or in denying the Catos' motion for a continuance.

*Issue Two*

The Catos contend that, because the remedy of a mechanic's lien is in derogation of the common law, strict compliance with all

statutory requirements is necessary. In particular, the Catos complain that David Excavating's notice of intention to hold a mechanic's lien states that the lien is for work done in the construction and of a building, whereas Jerry L. David, President of David Excavating, testified that his firm did not construct a building for the Catos. Instead, the Catos assert, the evidence shows that a roadway was constructed for them by David Excavating. They maintain that this variance of proof is fatal. In support of their position, the Catos cite *Windfall Natural Gas, Mining & Oil Co. v. Roe*, (1908) 42 Ind.App. 278, 85 N.E. 722.

David Excavating contends that *Windfall* is distinguishable because that

> "case merely holds that a mechanic's lien cannot be taken upon a structure where the labor and materials are provided for a different structure when the work was performed upon different lots for different people and said structure was not a part of the same structure upon which work was performed or material was provided."

Appellee's Brief at 24. David Excavating further maintains that Ind.Code 32–8–3–3 does not require the notice of intention to hold a lien to set forth the nature of the work done or materials furnished and that the reference in the notice to buildings is surplusage.

The notice of intention to hold a mechanic's lien filed by David Excavating, after setting forth the names and addresses of the Catos and stating that David Excavating intended to hold a mechanic's lien on certain described land, continued as follows:

> "and also upon the buildings thereon situate for the sum of $5000xx, for work and labor done, and materials furnished by David Exc in and for the erection and construction of said buildings, and which material was used in the construction thereof. Said work and labor was done, and materials furnished by David Exc at the request of Darrel Cato (who contracted with you for the construction of said buildings) and within the last sixty days. Said sum of $5000xx is now due."

The notice was signed by Jerry L. David as President of David Excavating, the firm's address was listed, and the signature was notarized. There was no reference in the notice to the roadway constructed by David Excavating for the Catos.

The notice was a printed form with the names, addresses, legal description, and contract price handwritten on blank lines. The references to buildings were part of the printed form.

The portion of IC 32–8–3–3 which is pertinent to the issue before us reads as follows:

> "Sec. 3. Any person who wishes to acquire a lien upon any *property*, whether his claim be due or not, shall file in the recorder's office of the county, at any time within sixty (60) days after performing such labor or furnishing such materials, or machinery, described in section 1 of this act, a *sworn statement in duplicate of his intention to hold a lien upon such property* for the amount of his claim, specifically setting forth the amount claimed, the name and address of the claimant and the name of the owner, and shall give legal description, street and number, if any, of *such lot or land* on which the house, mill, manufactory or other buildings, bridge, reservoir, system of waterworks or other structure may stand or be connected with or to which it may be removed." (Our emphasis.)

■ The term "property" as used in this section apparently comprehends both the improvement and the land improved, because later reference is made to "such lot or land on which the" improvement stands or to which it is connected or may be removed, thereby distinguishing between the improvement and the land. Indiana Code 32–8–3–1 supports this interpretation because it provides, in pertinent part:

> "Sec. 1. That contractors, subcontractors, mechanics, lessors leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, journeymen, laborers and all other persons performing labor or furnishing materials or machinery, in-

cluding the leasing of equipment or tools used, for the erection, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, systems of waterworks, or other structures, or for construction, altering, repairing, or removing any walk or sidewalk, whether such walk or sidewalk be on the land or bordering thereon, stile, well, drain, drainage ditch, sewer or cistern or any other earth-moving operation *may have a lien* separately or jointly *upon the* house, mill, manufactory or other building, bridge, reservoir, system of waterworks or other *structure*, sidewalk, walk, stile, well, drain, drainage ditch, sewer or cistern or earth which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description, *and, on the interest of the owner of the lot or parcel of land* on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either, . . . ." (Our emphasis.)

◼ Moreover, IC 32–8–3–3 requires the filing of a sworn statement of the claimant's "intention to hold a lien *upon such property* . . . ." (Our emphasis.) This provision further requires that the notice contain a *specific* statement of the amount claimed, the claimant's name and address, the name of the owner, and the legal description and street and number, if any, of the land. David Excavating would have us hold that the notice need state *only* these factors which IC 32–8–3–3 expressly requires to be specifically set forth. However, it is patently obvious that a document bearing only that information would not on its face indicate its purpose. David Excavating has ignored the basic requirement of the filing of a statement of "intention to hold a lien upon such property," *i.e.*, the improvement and the land to which the claimant desires the lien to attach. Reference to the improvement which is the subject of the lien is vital to a statement of intention to hold a mechanic's lien. The legal description and street and number would indicate nothing about the improvement.

*Windfall Natural Gas, Mining & Oil Co. v. Roe*, (1908) 42 Ind.App. 278, 279, 85 N.E. 722, involved a notice by Roe to Windfall of his intention to hold a mechanic's lien on "the gas-well, tubing, and piping located on" three specified lots, "as well as upon the derrick house recently erected thereon by me, . . . ." The complaint revealed that Gilchrist had contracted to drill a well on one of the lots described in the notice, and that Gilchrist, in turn, contracted to have Roe assist in putting down the well and had failed to pay Roe. The complaint further alleged that the notice mistakenly stated that Roe had worked on the derrick house and that Roe had not worked on a derrick house for Windfall but had worked on the well. Roe also alleged that, at the time of filing the notice, he did not know on which of the three lots the well was located and that he did not learn until more than sixty days after completing the well that the lot in question belonged to Todd, who was made a party to the foreclosure suit. The complaint requested reformation of the notice and foreclosure on the basis of the reformed notice. After trial, judgment was entered for Roe.

The Appellate Court noted that

"a lien may not be had upon one structure for labor and materials entering into another and different structure. . . .

"A joint lien may be had upon a number of structures, where they are built or repaired under a single contract and are thus connected in construction and ownership. In reality they are to be considered as one building or structure." (Citations omitted.)

42 Ind.App. at 280, 85 N.E. 722. There, however, the complaint did not show that the well and the derrick house were parts of the same structure or were built or owned by the same parties. What the complaint did show was that the claim was for work on a structure other than that specified in the notice. The court said "[t]he statute requires that a notice, to be sufficient to establish a mechanic's lien, shall state the

amount, to whom, by whom and for what, [sic] due, and shall describe the premises so that the owner may know the property intended to be charged." [1] *Id.* The court proceeded to hold the complaint insufficient to support foreclosure of a mechanic's lien on the gas well because the complaint showed the notice to be defective in that it failed to state correctly for what the lien was claimed and from whom the claim was due.

Although it was later held that the notice does not have to state by whom the claim is owing, *Cline v. Indianapolis Mortar & Fuel Co.*, (1917) 65 Ind.App. 383, 117 N.E. 509, *Windfall Natural Gas* still stands for the proposition that the notice must indicate for what the lien is claimed, *i.e.*, the improvement for which the lien is claimed. *Windfall Natural Gas* thus reinforces our reading of IC 32–8–3–3.

█ In addition to the imperative of the statutory language of IC 32–8–3–3 discussed above, there is a policy reason for requiring that the notice correctly refer to the improvement which is the subject of the mechanic's lien. The statutory notice operates as a warning to both the landowner and a prospective purchaser. *Froberg v. Northern Indiana Construction, Inc.*, (1981) Ind.App., 416 N.E.2d 451, *trans. denied.* The notice required by IC 32–8–3–3 often comes too late to be of benefit to the landowner, but it does serve the purpose of warning third parties such as prospective purchasers, landowners, or tenants of the existence of a lien on the property which is the object of their attention. *Mid America Homes, Inc. v. Horn*, (1979) Ind., 396 N.E.2d 879. A mechanic's lien extends to the entire parcel of land on which the building which is the subject of the lien stands or with which it is connected, including that part of the lot owned by the same parties but occupied by a different building for which no materials were furnished. *Judah*

*v. F. H. Cheyne Electric Co.*, (1913) 53 Ind. App. 476, 101 N.E. 1039. However, unless, a joint lien is appropriate because work was done on, or materials were supplied for, more than one structure on a single tract of land, pursuant to one contract, *Premier Steel Co. v. McElwaine-Richards Co.*, (1896) 144 Ind. 614, 43 N.E. 876; *Windfall Natural Gas, Mining & Oil Co. v. Roe*, (1908) 42 Ind.App. 278, 85 N.E. 722, a lien may not be had on one structure for work done on or materials furnished for a different structure. *Windfall Natural Gas v. Roe, supra*; 57 C.J.S. *Mechanics' Liens* § 187 (1948). Accordingly, because there may be pre-existing or later-constructed buildings on the land on which the improvement in question sits which would not be subject to the lien, third parties who are either not informed or misinformed by the notice as to which buildings or other improvements are subject to the lien could be needlessly discouraged from transacting business with the landowner.

█ The notice of intention to hold a mechanic's lien filed by David Excavating not only fails to identify the improvement which is the subject of the lien, *i.e.*, the roadway, but also purports to include within the lien improvements which are not subject to the lien, *i.e.*, buildings. Jerry David testified that his firm constructed no buildings for the Catos. It is obvious that David used a standard mechanic's lien notice form without adequately adapting it to the facts of the particular transaction. Although it might be argued that the Catos and David Excavating knew or should have known for which improvements on the land David Excavating was responsible and to which improvements the lien thus attached, there is no assurance that the notice would adequately apprise third parties of the subject of the lien. The notice of intention to hold a mechanic's lien is fatally defective.

1. The mechanic's lien notice provision in effect at the time of *Windfall Natural Gas, Mining & Oil Co. v. Roe*, (1908) 42 Ind.App. 278, 85 N.E. 722, was Burns' Ann.St. 1908, § 8297, Acts 1889, ch. 122, § 3, p. 258. Although it differed from Ind.Code 32–8–3–3 in a number of re- spects, it stated that the claimant must file "notice of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth the amount claimed, and giving a substantial description of such lot or land ...."

We do not mean to suggest that the requisite reference to the improvement which is the subject of a mechanic's lien must be stated with the specificity required of the description of the land to which the lien also extends. Indiana Code 32–8–3–3 does not require that a description of all of "such property," i.e., the improvement as well as the land improved, be set forth specifically, but only of "such lot or land" on which the improvement sits or is connected or to which it may be removed. However, the statutory requirement of a statement of intention to hold a lien upon property implies that some reference to the improvement be made which will distinguish it from other improvements to which the lien does not attach.

■ The trial court committed reversible error in foreclosing David Excavating's mechanic's lien on the Catos' property. Because the mechanic's lien is invalid, David Excavating was not entitled to recover attorney's fees and the award of such fees is also reversed. *King Pin Motor Lodge, Inc. v. D. J. Construction Co.*, (1981) Ind.App., 416 N.E.2d 1317; *Froberg v. Northern Indiana Construction, supra.*

■ The Catos make a number of other arguments which, in addition to attacking the validity of the mechanic's lien, raise the question of David Excavating's breach of the underlying contract. However, our review of the record leads us to the conclusion that there is conflicting evidence as to which party breached the contract. "A . . . judgment . . . shall be reversed upon appeal as not supported by or as contrary to the evidence only when clearly erroneous, and due regard shall be given to the opportunity of the finder of fact to judge the credibility of witnesses." Ind.Rules of Procedure, Appellate Rule 15(N). Inasmuch as there is evidence to support the judgment, we will not disturb the trial court's decision. The judgment on the underlying contract, therefore, stands despite the invalidity of the mechanic's lien.

*Issue Three*

David Excavating raises as cross-error the award of $500 nominal damages to the Catos on their counterclaim for trespass. It asserts that, although a trespass was committed by agents of David Excavating who went onto the Catos' property and dug holes in the roadway, there was no proof of actual damages. Consequently, David Excavating concludes that the award must have been intended to be nominal damages. The sum of $500, according to David Excavating, is excessive as nominal damages and should be reduced to an insignificant sum.

The Catos maintain that nominal damages are to be awarded for a nominal breach of rights and that the act of David Excavating's representatives' not only going onto the Catos' property without permission but also digging holes on the property is more than a nominal breach of the Catos' rights. As for the amount of damages awarded, the Catos argue that the trial court, as the trier of fact, acted within its discretion in fixing the damages at $500 and that any uncertainty as to the measure of damages should be resolved against the wrongdoer.

The trial court did not expressly label the award of $500 as "nominal damages" in the judgment. However, when counsel for the Catos orally amended the Catos' counterclaim at trial to include the trespass count, he said that if David Excavating were to admit to going onto the Catos' property and digging holes without the Catos' consent, then the Catos would be entitled to nominal damages for trespass even if there were no actual damages. Counsel for David Excavating admitted the essential allegations of the Catos' trespass count except as to damages.

The pertinent rules regarding damages for trespass to land were summarized in *Sigsbee v. Swathwood*, (1981) Ind.App., 419 N.E.2d 789, 799:

"In an action based upon the theory of trespass quare clausum fregit, the plaintiff needs to prove: 1) the plaintiff was in possession of the land; and 2) the defendant entered the land without right.

If the plaintiff proves both elements he is entitled to nominal damages without proof of injury. If the plaintiff proves any additional injury, proximately resulting from the trespass, the plaintiff is entitled to compensatory damages. *Indiana Pipe Line Co. v. Christensen* (1919), 188 Ind. 400, 123 N.E. 789; *Hawke v. Maus* (1967), 141 Ind.App. 126, 226 N.E.2d 713. The award of punitive damages in a trespass action is proper only upon a showing of fraud, malice or oppressive conduct. *Moore v. Crose* (1873), 43 Ind. 30; *Grad v. Cross* (1979), Ind.App., 395 N.E.2d 870; *Indiana & Michigan Elec. Co. v. Stevenson* (1977), Ind.App., 363 N.E.2d 1254."

█ The Catos do not contend that there was any quantitative evidence of the injury sustained by virtue of the trespass, such as diminution in value or cost of repair, nor have we located any such evidence in the record. Furthermore, although the Catos requested punitive damages with regard to the trespass count of their counterclaim, we find no evidence of fraud, malice, or oppressive conduct. Thus, we conclude that the $500 award could only be justified, if at all, as nominal damages.

"Nominal damages: were defined in *Glass v. Garber*, (1876) 55 Ind. 336, 340, as follows:

"Nominal damages are such as a party is entitled to for a mere nominal breach of his rights, where no actual damages have been suffered,—*damnum absque injuria*—and may be a cent, five cents, or a dime, or such insignificant sum in relation to the case as would fall within the maxim, *de minimus non curat lex*."

█ Certainly $500 is not an insignificant sum, and it appears to have been a rough approximation of the actual damages which the Catos might well have suffered but failed to prove. The Catos had the burden of proving the amount of their damages. The rule that uncertainties as to proof of the exact measure of damages must be resolved against the wrongdoer is inapplicable here, because it is the existence of actual damages which is uncertain rather than proof of the precise measure. Furthermore, there is no measure of nominal damages aside from the guidelines suggested in *Glass.*

█ We conclude that an award of $500 is excessive as nominal damages and that $1 is an appropriately insignificant sum. *See Smith v. Bruning Enterprises, Inc.,* (1981) Ind.App., 424 N.E.2d 1035. Accordingly, we reverse the judgment of the trial court awarding the Catos $500 in damages for trespass and order the trial court to enter judgment for the Catos on their counterclaim for trespass in the amount of $1. Ind. Rules of Procedure, Appellate Rule 15(N)(5).

The judgment of the trial court is affirmed with regard to the judgment in favor of David Excavating awarding damages for breach of contract and reversed as to the foreclosure of the mechanic's lien and as to the amount of the award in favor of the Catos on their counterclaim for trespass.

Costs are assessed three-fourths to Catos and one-fourth to David Excavating Co., Inc.

NEAL and ROBERTSON, JJ., concur.