B.J. WATKINS, Glennia Carroll and
Edith Ralston, Appellants
(Plaintiffs),

v.

Carl ALVEY and Martha Alvey,
Appellees (Defendants).

No. 36A01–8906–CV–188.

Court of Appeals of Indiana,
First District.

Jan. 30, 1990.

Gerald G. Angermeier, Jewell, Crump & Angermeier, Columbus, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, James C. Spencer, Deputy Atty. Gen., Indianapolis, amicus curiae.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

B.J. Watkins, Glennia Carroll and Edith Ralston (victims) appeal the trial court's judgment on the evidence in favor of Carl Alvey and Martha Alvey (Alveys) in an action charging the Alveys with conversion and with violation of the Indiana Deceptive Consumer Act.[1]

## FACTS

In late 1986 the victims were enticed to join a pyramid scheme in which each was to invest $1,500.00 for the prospect of gaining $12,000.00 within four (4) to eight (8) weeks. The scheme had four levels of participation. The top level consisted of one person, Martha Alvey, who recruited the two participants in the second level. Those two participants recruited the four participants in the third level and those four participants recruited the eight on the lowest level of the pyramid. Under the scheme, the eight lowest level participants were to pass money to the two second level participants, who would then pass the money to the person at the top. Edith Ralston gave $1,500.00 to R.W. who was on the second level, and R.W. passed the money to Martha Alvey. B.J. Watkins gave $1,500.00 to J.C., who was on the second level, and J.C. passed the money to Carl Alvey to give to Martha Alvey. Glennia

Carroll also gave $1,500.00 to J.C. who passed it to Martha Alvey through Carl Alvey.

After media coverage that this type of pyramid scheme was illegal, the victims hired an attorney who wrote Martha Alvey and demanded she return the victims' money. The Alveys did not repay the victims. The victims then filed a complaint charging the Alveys with conversion and with violation of the Indiana Deceptive Consumer Act.

A jury trial was held. At the close of the victims' case-in-chief the Alveys moved for a judgment on the evidence, asserting the victims had not demonstrated the Alveys were suppliers as the term was then defined in IC 24–5–0.5–2(3). The trial court granted the Alveys' motion and entered judgment in favor of the Alveys on the entire case. The trial court did not comment in its judgment on the victims' conversion cause of action. Further facts will be discussed as necessary.

## ISSUES

1. Did the trial court err in granting judgment on the evidence for the Alveys by determining that the Alveys were not suppliers under IC 24–5–0.5–2(3)?

2. Did the trial court err in granting judgment on the evidence for the Alveys without addressing the victims' conversion cause of action?

*Issue One*

The trial court granted the Alveys' motion for judgment on the evidence after the victims' case-in-chief because the court found that the Alveys were not suppliers as defined by IC 24–5–0.5–2(3). The victims contend that the trial court erred in granting the Alveys' motion because the Alveys were suppliers under that statutory provision and violated the statutory provisions of the Indiana Deceptive Consumer Act by operating a pyramid scheme. We note that the Alveys did not file an appellate brief. When an appellee fails to submit a brief, an appellant may prevail by making a prima facie showing of reversible

1. Ind.Code 24–5–0.5–1 to –10.

error. *Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726, 727. Thus, the victims may prevail by making a prima facie showing that the trial court made a reversible error.

Our standard for reviewing a trial court's ruling on a motion for judgment on the evidence is the same standard which governs a trial court in ruling upon the motion. *State v. Omega Painting, Inc.* (1984), Ind.App., 463 N.E.2d 287, 293. That is, we consider only the evidence and reasonable inferences therefrom most favorable to the nonmoving party. The motion should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim. *First Bank & Trust Co. of Clay County v. Bunch* (1984), Ind.App., 460 N.E.2d 517, 518–19, *trans. denied.*

In 1986 the legislature amended the Deceptive Consumer Sales Act, IC 24–5–0.5–1 to 10 with Public Law 12–1986, thereby providing remedies to individuals who lose money in a pyramid promotional scheme. Determination of legislative intent is foremost in our construction of any statute and, whenever possible, we will give deference to that intent. Consideration of the reasons and policy underlying a statute and of the goals sought to be achieved by the legislation is indispensable to our ascertainment of the legislature's intent. *In the Matter of Middlefork Watershed Conservancy District, Kleaving v. Board of Directors of Middlefork Watershed Conservancy District* (1987), Ind. App., 508 N.E.2d 574, 577. We must view a statute within the context of an entire act, rather than in isolation. *Board of School Trustees of South Vermillion School Corporation v. Benetti* (1986), Ind. App., 492 N.E.2d 1098, 1102, *trans. denied.*

Chapter 0.5 of IC 24–5 is entitled "Deceptive Consumer Sales." Ind.Code 24–5–0.5–1 Construction and Purposes states:

"Sec 1. (a) This chapter shall be liberally construed and applied to promote its purposes and policies.

(b) The purposes and policies of this chapter are to: ...

(2) protect consumers from suppliers who commit deceptive sales acts; ..."

To section 10, entitled "Suppliers; ·deceptive acts", the legislature added subsection 3:

"Sec. 10. A supplier commits a deceptive act if the supplier gives any of the following representations, orally or in writing, or does any of the following acts:

\*     \*     \*     \*     \*     \*

(3) Contrives, prepares, sets up, operates, publicizes by means of advertisements, or promotes a pyramid promotional scheme."

A "pyramid promotional scheme" is defined at IC 24–5–0.5–2(8), which reads as follows:

"(8) 'Pyramid promotional scheme' means any program utilizing a pyramid or chain process by which a participant in the program gives a valuable consideration exceeding one hundred dollars ($100) for the opportunity or right to receive compensation or other things of value in return for inducing other persons to become participants for the purpose of gaining new participants in the program ..."

"Promoting a pyramid promotional scheme," according to IC 24–5–0.5–2(9), means:

"(A) inducing or attempting to induce one (1) or more other persons to become participants in a pyramid promotional scheme; or

(B) assisting another in promoting a pyramid promotional scheme."

IC 24–5–0.5–4(a) permits an individual to seek damages and attorney fees for an incurred deceptive act after first providing notice, pursuant to IC 24–5–0.5–5(a), to the supplier. We hold that the clear intent of the legislature was to provide a cause of action and remedies for individuals who lose money in pyramid promotional schemes.

Although the record reflects the trial court granted the Alveys' motion for judgment on the evidence because "the Plain-

tiffs have failed to introduce any evidence on an essential element of their case under IC 24-5-0.5, i.e. whether the Defendants were 'suppliers' under the definition in the statute," Record at 252, the record does not reflect the parties' arguments on the issue at trial or the trial court's reasons for determining that the Alveys were not "suppliers." The term "supplier" was not amended by the legislature in 1986 when it added the provisions making pyramid schemes actionable deceptive acts. Thus, the definition of "supplier" at the time of trial remained:

"(3) '[S]upplier' means a seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including a manufacturer, wholesaler, or retailer, whether or not he deals directly with the consumer."

IC 24-5-0.5-2(3) (now at IC 24-5-0.5-2(3)(A)).

Our task is to analyze whether the legislature meant the term "supplier" to include a promoter of a pyramid scheme and, if so, then to decide whether evidence indicates the Alveys may have been suppliers. Whereas "supplier" as defined above indicates a person who "regularly engages in or solicits consumer transactions," the legislature used singular language in referring to the operation and promotion of a pyramid scheme. In IC 24-5-0.5-10(3) the legislature used the language "promotes a pyramid promotional scheme" when identifying the promotion and operation of a pyramid promotional scheme as a deceptive act. Thus, the legislature clarified that promotion and operation of one such scheme would be deceptive. In IC 24-5-0.5-2(8), when defining the term "pyramid promotional scheme," the legislature used the term "any program" to indicate that only one such program was required to meet the definition. Finally, in IC 24-5-0.5-2(9)(A), the legislature defined promotion of a pyramid scheme as "inducing or attempting one (1) or more other persons to become participants."

■ Thus, the legislature clearly indicated that a promoter did not have to be regularly engaged in the business of pyra-

mid scheme promotion in order to be subject to the statute. The legislature's singular language in the above three instances clarified that a person promoting and operating only one scheme to induce or attempt to induce only one person to become a participant could be subject to penalties under the statute. In other words, by defining promoter in the above provisions, the legislature provided the definition of supplier for purposes of a pyramid scheme. Regular engagement or regular solicitation in the business of pyramid promotion is not required in order for a promoter to be a "supplier" subject to the statute.

■ To narrowly interpret the statute to find that pyramid scheme promoters are not "suppliers" would mean that the statute could not be used against many individuals or businesses. Such a result would be contrary to the legislature's clear intent.

We can be certain that we have correctly determined the legislature's intent since the legislature clarified its intent by passing Public Law 24-1989, Section 10 after the present case was tried.

"SECTION 10. IC 24-5-0.5-2 IS AMENDED TO READ AS FOLLOWS: Sec. 2. As used in this Chapter:

. . .

(3) "Supplier" means:

(A) a seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including a manufacturer, wholesaler, or retailer, whether or not he deals directly with the consumer; or

(B) a person who contrives, prepares, sets up, operates, publicizes by means of advertisements, or promotes a pyramid promotional scheme."

Acts 1989, P.L. 24, § 10, p. 491-2. The legislature made the provision effective May 15, 1989 and stated in Section 30 of the Public Law that "Sections 2, 8, . . . of this act are clarifications only and should not be construed as modifications of existing law." In light of the above, we hold that when the circumstances of this case occurred and throughout the trial, the definition of "supplier" under IC 24-5-0.5-2 included a person who contrived, prepared,

set up, operated, publicized or promoted a pyramid scheme.

■ As earlier noted, a trial court must deny a motion for judgment on the evidence if there is any evidence or reasonable inference on each of the elements of a claim. *First Bank & Trust Co. of Clay County*, 460 N.E.2d at 518–19. The victims presented evidence that the Alveys were substantially involved in a pyramid promotional scheme. The Alveys held meetings at their home to present information about the operation of the pyramid scheme and the amount of investment required. The Alveys talked in glowing terms of the money they had made in the scheme and encouraged people at the meetings to become participating investors. Martha Alvey was the final receiver of the victims' money, $1,500.00 having been contributed by each victim, and Martha Alvey failed to return the victims' money after they requested her to do so.

Under the definition of "supplier," such evidence and the reasonable inferences therefrom were sufficient for the case to have been presented to the jury on a theory of the Alveys' violation of the Indiana Deceptive Consumer Act. The victims have made a prima facie case that the trial court erred in granting the Alveys' motion for judgment on the evidence.

*Issue Two*

■ The victims contend that the trial court erred in granting the Alveys' motion for judgment on the evidence without addressing the victims' conversion cause of action. The victims argue that they presented evidence on all the elements of conversion and that the issue should have been presented to the jury for determination.

Ind.Code 34–4–30–1 provides a civil remedy for conversion which allows plaintiffs to recover treble damages, costs and attorneys fees. The elements necessary to establish conversion are those found in the criminal conversion statute, IC 35–43–4–3. *See Lambert v. Yellow Bird, Inc.* (1986), Ind.App., 496 N.E.2d 406. IC 35–43–4–3 states, "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion ..."

The victims' complaint stated a conversion cause of action and the victims consistently maintained that theory to the trial court as evidenced by their brief opposing a motion to dismiss, their memorandum opposing motions for summary judgment, their trial brief and their submitted jury instructions. The evidence adduced at trial showed that Martha Alvey had received $1,500.00 from each of the victims as the victims' investment into a pyramid scheme. The evidence also showed that the victims, through counsel, had requested that Martha Alvey return their money, but she failed to return it. Such evidence and the reasonable inferences therefrom were sufficient for the case to have been presented to the jury on a conversion theory. The victims have made a prima facie case that the trial court erred in granting the Alveys' motion for judgment on the evidence.

We hold that the trial court erred in granting judgment on the evidence to the Alveys after the victims' case-in-chief because the victims presented evidence on each element of both their conversion cause of action and their cause under the Indiana Deceptive Consumer Act. We reverse the trial court's judgment and remand the case for further proceedings in accordance with this opinion.

Reversed.

BAKER, J., and HOFFMAN, J., concur.