**Carl L. DAHLIN, and Mary Dahlin, Appellants (Defendants Below),**

v.

**AMOCO OIL CORPORATION, Appellee (Plaintiff Below).**

No. 45A03–8911–CV–477.

Court of Appeals of Indiana, Third District.

Feb. 26, 1991.

Lonnie M. Randolph, East Chicago, for appellants.

Nick Katich, Karen L. Hughes, Lucas, Holcomb & Medrea, Merrillville, for appellee.

STATON, Judge.

Carl L. and Mary Dahlin appeal a grant of specific performance and an award of nominal damages on their counterclaim for breach of contract. Their appeal raises

eight issues, which we have consolidated and rephrased as follows:

I. Whether the trial court erred by granting Amoco Oil's motion for summary judgment on the issue of specific performance.

II. Whether the trial court erred in only permitting the recovery of nominal damages in the sum of one dollar for Amoco's breach of contract.

III. Whether the trial judge erred in not excusing himself for alleged bias and imposing sanctions upon the Dahlins for pursuing the claim of bias through discovery requests to nonparties.

The appellees raise an additional issue:

IV. Whether Amoco is entitled to attorney's fees pursuant to Indiana Rules of Procedure, Appellate Rule 15(G).

We affirm.

On July 5, 1968, Carl L. and Mary Dahlin agreed to lease a certain parcel of real property to Amoco Oil Co. for a period of ten years, with three optional five year extensions. Amoco owned a tract of land which adjoined the Dahlins' parcel. One provision of the lease was a restrictive covenant which prevented Amoco from erecting buildings on the leased land. The lease also gave Amoco the option to purchase the leased property at any date after October 8, 1978 for $100,000. The Dahlins were given the option to purchase Amoco's adjoining tract of land for $32,000, to be exercised in the last three months of the lease period or any extension period.

In early 1984, Carl Dahlin, Jr., the son of the appellants, noticed that a building being built by Amoco appeared to encroach upon the leased land in violation of the covenant against buildings. He called this to Amoco's attention in an attempt to "straighten the problem out." Amoco sent a letter in reply which indicated that Amoco wished to exercise its option to purchase the Dahlins' land.

The Dahlins refused to close the deal, and Amoco filed this action for specific performance. The Dahlins counterclaimed for breach of contract and unjust enrichment. The trial court granted summary judgment for Amoco on its specific per-formance claim, for the Dahlins on their claim for breach of lease, and against the Dahlins on their claim for unjust enrichment. At trial, judgment on the evidence was granted against the Dahlins on all forms of damages except nominal damages. The jury returned a verdict for the Dahlins in the sum of $200,000, and the trial court remitted the verdict to the sum of $1. The court denied the Dahlins' post-trial petitions for attorney's fees and prejudgment interest, as well as their motion to correct errors. This appeal followed.

I.

### Specific Performance

■■■ The Dahlins first argue that the trial court erred in granting specific performance of the option to purchase the leased real estate. We do not reach the merits of this issue because we find it to be moot.

If a party to a judgment voluntarily acquiesces in or recognizes the validity of such judgment or otherwise takes a position which would be inconsistent with any theory other than the validity of the judgment, he has impliedly waived his right to contest the validity of the judgment on appeal. *Arnold v. Haberstock*, 213 Ind. 98, 10 N.E.2d 591, 593 *rehearing denied* (1937), 213 Ind. 98, 11 N.E.2d 682. Thus, any subsequent appeal of that judgment becomes moot. *Buck v. K.G. Schmidt Brewing Co.* (1952), 123 Ind.App. 217, 105 N.E.2d 823, 825.

After summary judgment was rendered on the specific performance issue in this case, the Dahlins sold the real estate to Amoco on July 28, 1989 for the sum of $83,900.00. That sum represented the $100,000 option price minus $16,100 in rent payments which Amoco had made since it had communicated its desire to the Dahlins to exercise the option to purchase. In closing the real estate transaction with Amoco, the Dahlins took a position inconsistent with any theory other than the validity of the judgment for specific performance. They could have forestalled selling the property to Amoco pending this appeal.

*Buck, supra,* 105 N.E.2d at 824–825. By electing instead to sell the property, they have waived their right to argue on appeal that the specific performance decree was invalid and unenforceable, and therefore their appeal on this issue is moot.

## II.

### Damages

At the close of the Dahlins' case, the trial judge denied Amoco's judgment on the evidence with respect to compensatory damages, but granted it with respect to punitive damages. At the close of Amoco's case, the trial judge granted judgment on the evidence with respect to compensatory damages. The matter went to the jury on the issue of nominal damages, and the jury returned a verdict for the Dahlins for $200,000. The trial judge granted Amoco's motion for remittitur, and the verdict was reduced to $1. The trial judge also denied the Dahlins' petitions for attorney's fees and prejudgment interest. The Dahlins appeal each of these adverse rulings on damages.

### A. *Punitive Damages*

The Dahlins contend that the trial court erred in granting Amoco's motion for judgment on the evidence on the issue of punitive damages.[1] In reviewing a grant of judgment on the evidence, we employ the same standard which governs the trial court. *Watkins v. Alvey* (1990), Ind.App., 549 N.E.2d 74, 76. We consider only the evidence and reasonable inferences to be drawn therefrom most favorable to the nonmoving party. *Id.* The motion should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim. *Id.* Neither this court nor the trial court may weigh conflicting evidence when reviewing the propriety of the motion. *First Bank & Trust Co. of Clay County v. Bunch* (1984), Ind.App., 460 N.E.2d 517, 519, *transfer denied.*

In Indiana, punitive damages are not generally recoverable for a breach of contract. *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, 579, *transfer denied.* In order to recover punitive damages in a breach of contract case, the plaintiff is required to prove by clear and convincing evidence that the defendant's actions in breaching the contract were accompanied by malice, fraud, gross negligence, or oppressive conduct. *Id;* IC 34-4-34-2 (Supp.1990). This standard does not contemplate recovery when the evidence merely is consistent with the hypothesis of such conduct. *Dow Chemical v. St. Vincent's Hospital* (1990), Ind.App., 553 N.E.2d 144, 150, *transfer pending.* Rather, the plaintiff must provide some evidence "that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other such noniniquitous human failing." *Id.*

Here, the trial court correctly found that this burdensome standard could not be met by the evidence which the Dahlins introduced. No evidence whatsoever of fraudulent or malicious conduct on the part of Amoco appears in the record. The Dahlins argue that gross negligence or intentional conduct was shown by the fact that Amoco did not notify the Dahlins that it was building on the leased property, and that after Amoco was given notice of the breach, it continued to build the building and did nothing to remedy the breach. They contend that the evidence shows that "Amoco was hoping that the Dahlins would not find out about the new building because of the possibility that the building would increase the value of the land and thus force the renegotiation of the lease agreement." Appellants' Brief at 26. However, the lease provides an option to purchase the land for $100,000.00, regardless of the value of the land. Amoco was entitled to enforce that price under the

---

1. The Dahlins argue that the trial court erred in granting summary judgment on this issue. A cursory review of the record, however, reveals that the trial court granted Amoco's motion for judgment on the evidence on this issue at the close of the Dahlins' case-in-chief, not a motion for summary judgment. Record, p. 299.

lease without the necessity of "renegotiation."

The evidence also shows that Amoco informed the Dahlins that they intended to exercise the purchase option two months after it was notified in writing of the breach. Although this response perhaps could not be characterized as prompt, it represented an acceptable method under the lease by which the dispute could have been resolved.

The lease is a standard form contract, obviously prepared by Amoco. The second page of the form contains a provision which allows Amoco to construct buildings on the leased premises. In the Dahlins' lease, the language referring to buildings is crossed out and the parenthetical words "(except buildings)" are typed in at the end of the paragraph. Record, p. 26. At trial, the Dahlins presented no evidence inconsistent with the hypothesis that Amoco merely relied on the fact that the lease was no different from the countless other leases which it had entered into with other parties across the country which allowed the construction of buildings on the leased premises. Certainly, such reliance would not excuse Amoco's breach of the lease, and its failure to check the lease for a deviation from the normal language could be characterized as negligent. Such a failure to act, however, is neither grossly negligent or intentional so as to warrant imposition of punitive damages.

■ The Dahlins finally contend that public policy would be served in assessing punitive damages against Amoco because "it would aid in deterring multi-million dollar corporations like Amoco Oil to respect the sanctity of contract terms a little more strictly." Appellant's Brief, p. 27. The mere breach of a contract, without more, does not justify punitive damages. The fact that a corporation has deep pockets does not discharge the party claiming punitive damages from proving conduct which is fraudulent, malicious, oppressive, or grossly negligent. Amoco's extensive assets do not change the fact that the Dahlins failed to carry this burden at trial. The trial court did not err in granting a judgment on the evidence as to punitive damages.

### B. *Compensatory Damages*

■ The Dahlins next contend that the trial court erred in granting a judgment on the evidence as to compensatory damages at the close of the evidence. Although no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record, an award may not be based upon mere conjecture, speculation, or guesswork. *Ashland Pipeline v. Indiana Bell Telephone Co.* (1987), Ind.App., 505 N.E.2d 483, 489–490, *transfer denied.*

At trial, the Dahlins offered the following evidence of damages incurred as a result of the breach:

Q: And what expenses did you incur?
A: Retainers for attorney; title search that Standard told me that I was responsible for. So I went out and had a title search; about 500 bucks, 550, thereabouts.
Q: How many trips did your dad make here from California during that time?
A: To the best of my knowledge at least two times. And then there's the small expense, you know, of letters and travel, you know. I would say a couple thousand dollars involved in the forementioned.

Record, p. 276, 1. 26, p. 277, 11. 1–9. As we will discuss later, attorney's fees are not recoverable here. The cost of the title search is also not recoverable, since the provisions of the lease required the Dahlins to provide a title policy if Amoco exercised its option. Although Carl Jr. testified that this father made at least two trips to Indiana from California, he did not indicate what portion of the visit was devoted to dealings with Amoco, or even that the trips had anything at all to do with the leased property. Other than to indicate that it was a small expense, Carl Jr. did not indicate what the extent of the mailing and travel expenses were. Apparently, these expenses involve his communications with Amoco to indicate to them that they were in breach of the lease, but that is not

abundantly clear from the record. To require the jury to assess damages on this slim basis would ask nothing more than speculation.

The Dahlins also argue that they were entitled to recover compensatory damages for emotional stress. Generally, compensatory damages for mental anguish are recoverable only when the mental anguish results from and is accompanied by a physical injury. *Colvin, supra,* 545 N.E.2d at 576. Exceptions to this rule arise when the tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance, or when the conduct causing the injury was intentional and inspired by fraud, malice, or like motives. *Id.* at 576–577. Here, there was no evidence of a physical injury, willful or malicious conduct, or fraud.

Finally, the Dahlins argue that the loss of the option to purchase the adjoining property owned by Amoco should properly have been allowed as compensatory damages. The option allowed them to purchase the adjoining parcel of land owned by Amoco for not less than $32,000 *if the option was exercised within the final thirty days of the lease period or any extension thereof.* Amoco extended the lease for five years from October 1, 1983 to October 1, 1988. Thus, on September 10, 1984, the time of the written notice of the breach, the parties were not in the final thirty days of the extension period and the Dahlins' purchase option did not exist. Any any time during the term of the lease, Amoco could have rightfully terminated the Dahlins' entitlement to the option by exercising its own option to purchase the leased premises before the thirty day period came to pass. Thus, the loss of the option was not a proper element of damages.

We find no error in the trial court's grant of judgment on the evidence on the issue of compensatory damages.

### C. *Remittitur*

Next, Dahlin contends that the trial court erred in granting the remittitur from $200,000 to $1. The power of a trial court to grant a remittitur is of ancient origin, and is generally looked upon with favor. *Indianapolis St. Ry. Co. v. Kane,* 169 Ind. 25, 80 N.E. 841, 845, *rehearing denied* (1907), 169 Ind. 25, 81 N.E. 721. It is sanctioned upon the theory that the excess portion of the verdict arises from an error of law, a mistake in computation, or a misapprehension of facts which does not permeate the entire verdict and may therefore be corrected to avoid expensive litigation and unnecessary delays. *Blair Baker Horse Co. v. Railroad Transfer Co.* (1915), 59 Ind.App. 505, 108 N.E. 246, 249, *transfer denied.* In this case, the trial court sought to correct an error of law: $200,000 is not nominal damages.

In *Cato v. David Excavating Co., Inc.,* the court noted:

> "Nominal damages are such as a party is entitled to for a mere nominal breach of his rights, where no actual damages have been suffered,—*damnum absque injuria*—and may be a cent, five cents, or a dime, or such insignificant sum in relation to the case as would fall within the maxim, *de minimus non curat lex.*"

(1982), Ind.App., 435 N.E.2d 597, 607, *quoting Glass v. Garber* (1876), 55 Ind. 336, 340. The court found that $500 was not an insignificant sum and reversed, directing the trial court to enter judgment in the nominal sum of $1.

Contrary to the Dahlins' argument, we find in this case that $200,000 is not an insignificant sum which would constitute nominal damages. Courts have generally found $1 to constitute nominal damages. *Cato, supra; Olson v. Fraase* (1988), N.D., 421 N.W.2d 820, 826; *Colorado Inv. Services, Inc. v. Hager* (1984), Colo.App., 685 P.2d 1371, 1375; *Stevenson v. Economy Bank of Ambridge* (1964), 413 Pa. 442, 197 A.2d 721, 728. Therefore, we hold that the trial court did not err in remitting the jury's verdict from $200,000 to $1.

### D. *Attorney's Fees*

The Dahlins contend that the trial court erred in denying their post-trial petition for attorney's fees. They acknowledge that a prevailing party is not entitled to recover attorney fees absent a prior agreement or statute which so provides,

*Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.* (1987), Ind.App., 507 N.E.2d 588, 603, but they argue that the lease provided for recovery of attorney fees in this situation. Upon reviewing the lease, we reach a contrary conclusion.

The Dahlins first point to paragraph 3 of the lease rider, which states in relevant part:

> In case of default in any of the covenants herein, the Lessor may enforce the performance of this lease in any modes [sic] provided by law....

Record, p. 24. The law allows recovery of attorney's fees only by agreement or pursuant to statute. This provision does not constitute an agreement for recovery of attorney's fees in the event of a breach.

The Dahlins next argue that paragraph 8 of the lease entitles them to attorney's fees:

> 8. Lessee agrees to indemnify and save harmless Lessor from all claims, mechanic liens, damages, demands, actions, costs and charges *arising out of or by reason of the erection and construction of the improvements herein contemplated,* and the operation of the business herein authorized on the premises herein demised during the term of this lease.

Record, p. 27 (emphasis added). Clearly, the whole basis of the Dahlins' counterclaim is that the building complained of was *not* "contemplated" by the lease. The obvious intention of paragraph 8 of the lease is to allow the Dahlins to avoid liability which might result from Amoco's dealings with third parties in the normal business to be conducted on the premises; the provision does not allow the Dahlins to recover attorney's fees for an action of this nature. Accordingly, we hold that the trial court did not err in denying the Dahlins' petition for attorney's fees.

### E. *Prejudgment Interest*

Finally, the Dahlins contend that the trial court erred in denying their post-trial petition for prejudgment interest. Prejudgment interest may be recovered as additional damages to accomplish full compensation when a damage award is made. *Spinsky v. Kay* (1990), Ind.App., 550 N.E.2d 349, 353, *transfer denied; Indiana Insurance Company v. Sentry Insurance Company* (1982), Ind.App., 437 N.E.2d 1381, 1391. Here, the Dahlins argue that they should be awarded prejudgment interest on the money which they received from the sale of the property pursuant to the lease. This money was not awarded as damages. *Spinsky, supra,* at 353. Furthermore, any delay which the Dahlins experienced in receiving the money from the transaction was due to their own actions in contesting Amoco's action for specific performance and in failing to close the deal. The trial court did not err in denying the Dahlins' petition for prejudgment interest.

### III.

### *Bias of the Trial Judge*

The Dahlins contend that they are entitled to a new trial because the trial judge was biased, in that the trial judge's probate commissioner is an attorney for First Bank of Whiting, which does "considerable business" with Amoco Oil Corporation, the plaintiff herein. This contention is wholly without merit.

A judge is presumed by the law to be unbiased and unprejudiced. *Smith v. State* (1989), Ind., 535 N.E.2d 1155, 1157. In order for a litigant to overcome this presumption, he must establish actual personal bias against him. *Id.* Upon review of a judge's failure to disqualify himself, we will assume that a judge would have complied with the obligation to disqualify himself had there been any reasonable question concerning his impartiality, unless we discern circumstances which support a contrary conclusion. *Austin v. State* (1988), Ind.App., 528 N.E.2d 792, 794.

Here, there is no indication that the judge was motivated by any concerns other than the prevailing law in making his rulings. The Dahlins would have us believe that Amoco pressured the Bank which pressured the judge's probate commissioner who in turn pressured the judge to give Amoco favorable treatment. However,

they can point us to no specific instance which would indicate that the judge felt the pull of this tenuous chain of relationships. They have thus failed to establish any actual bias.

 The Dahlins also argue that the court erred in requiring them to pay the costs of a protective order filed by First Bank of Whiting to avoid the Dahlins' interrogatories and requests for production directed to the Bank (who was not a party to the action) to investigate their allegations of bias. A trial court has discretion to impose sanctions upon a party in accordance with the rules of discovery when a party abuses the discovery process. *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 1009, *transfer denied.* We will reverse only upon a finding of abuse of discretion.

Trial Rule 34(C) allows a party to obtain the discovery contemplated in Trial Rule 34 from nonparties. This provision does not include interrogatories, and there is no corresponding provision in Trial Rule 33 dealing with interrogatories. Moreover, Trial Rule 26(C) provides in relevant part:

(C) Protective Orders. Upon motion by any party *or by the person from whom discovery is sought,* and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires to protect a party *or person* from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the discovery not be had;

.... The provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion.

Thus, a nonparty may move for a protective order under Rule 26(C) to avoid answering vexatious discovery and obtain costs of the motion under Rule 37(A)(4). Here, the Dahlins sought extensive discovery after judgment from an entity who was not a party to this action in an attempt to obtain information to fuel a convoluted collateral attack against that judgment.

Although discovery under the trial rules has a broad scope, Rule 26(C) protects an individual from "fishing expeditions" into irrelevant or privileged material. *Collins v. Bair* (1971), 256 Ind. 230, 268 N.E.2d 95, 101. Thus, it is particularly appropriate here to halt a wild goose chase, as are the sanctions under Rule 37(A)(4) to impose its costs upon the errant hunter. We find no error.

## IV.

### *Damages Pursuant to Appellate Rule 15(G)*

Amoco argues that Dahlins' appeal is "absolutely meritless and frivolous," entitling it to damages under Appellate Rule 15(G). Appellee's brief at 34. We disagree.

In *Orr v. Turco Manufacturing Co., Inc.* (1987), Ind., 512 N.E.2d 151, 153, Justice Dickson wrote:

The vitality of the law as a living institution rests largely upon its capacity to embrace and promote the opposing concepts of stability and growth. We are mindful of Dean Pound's aphorism: "Law must be stable and yet it cannot stand still," Pound, *Interpretations of Legal History*, p. 1., (1923).

To facilitate these objectives, we must invite, not inhibit, the presentation of new and creative argument. We therefore hold that punitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility.

Although we have found the Dahlins' contentions to be without merit, we cannot say that they are utterly devoid of all plausibility. Accordingly, we must deny Amoco's request for damages pursuant to Appellate Rule 15(G).

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs in part and dissents in part and files separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

## I.

I do not agree that the issue of specific performance has been rendered moot. Had Dahlins not consummated the sale as ordered, arguably they would have found themselves in contempt. I do not believe there was any legal compulsion for them to seek a stay pending appeal, although they ran a risk that if they obtained a reversal upon appeal, Amoco might have done something in the interim to encumber the property. In any event, I do not believe that in obeying the court order, Dahlins give up their right to seek a determination that the trial court was wrong in ordering specific performance.

We should decide the issue upon the merits with regard to the severability of the provisions concerning the restrictive covenant *vis-a-vis* the option to purchase. Absent a majority, however, it would serve no useful purpose to discuss the issue in this separate opinion.

## II. (A)

It would appear that after notification of the breach, Amoco continued with the construction. Such would seem to remove the breach from even the "grossly negligent" category and place it within an intentional, if not malicious, category. In this connection, the majority acknowledges that the lease in question was prepared by Amoco but holds that Amoco was warranted in assuming that the lease was no different from other similar leases but which allowed construction on the leased premises. In my estimation such assumption was unwarranted, if in fact it was made. The lease in question clearly contained a modification which precluded the construction of buildings. It was the duty of Amoco to be aware of its business dealings and to know the contents of legal documents governing that corporate enterprise. If the question were submitted to the jury, a reasonable conclusion could be drawn that Amoco either ignored the modification or was "grossly negligent" in failing to notice it.

In the case before us, an award of actual damages was made, albeit in the nominal sum of one dollar. Given the facts of this case, that award carries with it the permissibility of a punitive damage award. *Arlington State Bank v. Colvin* (1989) 1st Dist., Ind.App., 545 N.E.2d 572. Although I may agree that by belatedly exercising the option, most, if not all of the sting was taken from the encroachment, the question of punitive damages should have been submitted to the jury.

## II. (B)

I concur.

## II. (C)

I concur in result.

## II. (D) and (E)

I concur.

## III.

I concur in part and dissent in part.

Dahlins have demonstrated no prejudice in the judgment itself which could be attributed to a conflict of interest. The relationships here were remote and were asserted as suspect only after trial and judgment. Under such circumstance, even assuming merit to Dahlin's argument, the judge would have had to grant a new trial in order to recuse himself. I agree that cause for reversal is not indicated in this regard.

I do however, dissent from the approval given by the majority to the sanctions imposed under Trial Rule 37(A)(4). The Dahlins were attempting to discover the depth and nature of the relationship which carried with it the appearance of a conflict in interest. The Probate Commissioner is an officer of the court. It was not inappropriate for the Dahlins to seek to learn more about his connection with Amoco through the Bank. Some conflicts are created not by direct activity of the attorney in the litigation, but rather by another member of the same law firm. Similarly, that the trial judge himself does not have a direct conflict, will not necessarily eliminate the ne-

cessity for a recusal. To be sure, a litigant may not indulge in mere "fishing expeditions". However, a party may not determine whether to seek recusal unless he has knowledge of or tries to determine the existence and extent of a possible conflict. The Dahlins should not have been compelled to pay the costs of the protective order sought by the Bank and joined by Amoco.

## IV.

I concur.