**CONSOLIDATED RAIL CORPORATION, a Pennsylvania corporation, Plaintiff,**

v.

**STATE OF MICHIGAN, State of Michigan Department of Natural Resources, County of Ingham, Henry Hill, an individual, Hot Light Productions, an unincorporated entity, City of Lansing, and Lansing Board of Water and Light, Defendants.**

No. 1:96–CV–788.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 27, 1996.

Hans J. Massaquoi, Lewis, Clay & Munday, Detroit, MI, for Consolidated Rail Corp.

Kevin T. Smith, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Revenue Div., Lansing, MI, for State of Mich.

Kevin T. Smith, Asst. Atty. Gen., Revenue Div., Lansing, MI, for Michigan Dept. of Natural Resources.

David G. Stoker, Kathleen M. Abbott, Cohl, Stoker & Toskey, PC, Lansing, MI, for County of Ingham.

David G. Stoker, Cohl, Stoker & Toskey, PC, Lansing, MI, for Donald Moore.

David J. Anderson, Anderson, Stull & Associates, Lansing, MI, for Henry Hill, Hot Light Productions.

Clinton Canady, III, Lansing, MI, James D. Smiertka, Lansing City Attorney's Office, Dept. of Law, Lansing MI, for City of Lansing.

Clinton Canady, III, Lansing, MI, Lawrence H. Wilhite, Lansing Bd. of Water & Light, Lansing, MI, for Lansing Bd. of Water and Light.

## OPINION

QUIST, District Judge.

This matter is before the Court on Plaintiff's motion for preliminary injunction. In its complaint, Plaintiff seeks to quiet title to certain real property located in Lansing, Michigan. Plaintiff alleges that Defendant County of Ingham failed to give pre-sale and post-sale notice of the tax sale of the property as required under Michigan law. Therefore, Plaintiff contends that its constitutional right to due process has been violated and institutes this action to quiet title and obtain injunctive relief.

### Facts

Plaintiff, Consolidated Rail Corporation ("Conrail"), claims to own real property located at 635 East Grand River Avenue, Lansing, Michigan. The property contains a structure that houses electrical equipment

that controls relay mechanisms for an intersection where several sets of railroad tracks converge.

From 1990 to 1993, employees of the City of Lansing entered the property to clean up trash, cut weeds, and pave the sidewalk. Subsequently, the City of Lansing assessed special assessments against Plaintiff for the clean up, cutting, and paving. Plaintiff claims never to have received notice of the special assessments. In May of 1993, the County of Ingham put the property up for sale to pay for the delinquent taxes. Eventually the property was bid off to the State of Michigan. On April 5, 1996, the State of Michigan sold the property to Henry Hill and Hot Light Productions. Defendants Henry Hill and Hot Light Productions notified Plaintiff that, unless Plaintiff paid rent, they would shut off the power to the property and demolish the structure that houses the electrical equipment. Additionally, Defendants Henry Hill and Hot Light Productions allegedly denied Plaintiff unrestricted access to the property.

This Court held a hearing on November 21, 1996, wherein it heard testimony and issued an Opinion from the bench indicating that a Preliminary Injunction would issue with a bond of $5,000. At that time, this Court said that it would take a closer look at the arguments regarding Plaintiff's likelihood of success on the merits. The Court has had the opportunity to review the arguments, case law, and evidence, and now renders this Opinion.

### Discussion

█ A district court should address the following factors in determining whether to issue a preliminary injunction: 1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim, 2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief, 3) the probability that granting the injunction will cause substantial harm to others, and 4) whether the public interest is advanced by the issuance of the injunction. *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1480 (6th Cir.1995) (citing *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994), *cert. denied,* —— U.S. ——, 116

S.Ct. 1421, 134 L.Ed.2d 545 (1996)). These factors are "to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *Id.* (quoting *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)).

### 1. Likelihood of Success on the Merits

█ Plaintiff seeks relief under 42 U.S.C. § 1983 claiming that the sale of the property violated Plaintiff's due process rights under the 14th Amendment to the United States Constitution.

Plaintiff first alleges that it was not properly notified of the delinquent real property taxes or the scheduled tax sale as required under Michigan law. A county treasurer must notify a property owner, by first-class mail to the last known address of the property owner, of delinquent real property taxes and the scheduled tax sale at least thirty (30) days prior to the sale. M.C.L. § 211.61a. Notice of delinquent taxes and notice by publication are not enough to satisfy due process requirements in tax sale proceedings. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983).

█ Under M.C.L. § 211.61a, failure of actual notice does not invalidate tax sale proceedings; however, the state must exert reasonable efforts to provide notice. *Dow v. State of Michigan,* 396 Mich. 192, 211, 240 N.W.2d 450, 459 (1976). In fact, the Supreme Court of Michigan stated that "[m]ailed notice must be directed to an address reasonably calculated to reach the person entitled to notice .... [i]f the state exerts reasonable efforts, then failure to effectuate actual notice would not preclude foreclosure of the statutory lien and indefeasible vesting of title on expiration of the redemption period." *Id.* If tax bills are returned, it would be reasonable to expect a county to obtain the correct address of the property owner. *See City of Grand Rapids v. Green,* 187 Mich.App. 131, 136–37, 466 N.W.2d 388, 391 (1991) (city assessor testifying that the city does everything possible to locate the owner of property when a tax bill is returned).

Defendants Henry Hill and Hot Light Productions produced evidence that notices were sent to Plaintiff at several addresses. However, all but two of these notices had been returned by the post office. The regional Director of Operations for Conrail testified that the post office box address that these two unreturned notices were sent to was the incorrect post office box address for tax notices. The Chief Deputy Treasurer of Ingham County testified that she did not know who obtained the post office box address or how, where or from whom it was obtained.

Plaintiff next alleges that it was not notified of the expiration of the first redemption period. Under M.C.L. § 211.74(1), a property owner may redeem land that was sold pursuant to a tax sale "at any time before the first Tuesday of May in the year following the sale." When lands subject to a tax sale are bid off to the state, M.C.L. § 211.73c requires that 120 days prior to the expiration of the redemption period the county treasurer must notify the property owner of the expiration "by certified mail with return receipt demanded, with postage fully prepaid." Once this redemption period expires, the title to the property vests in the state.

Defendants provided evidence of notice by certified mail to the Plaintiff of the expiration of the first redemption period. However, there was no acknowledgment of receipt as required by statute. Moreover, the Chief Deputy Treasurer of Ingham County admitted that she did not know if Plaintiff received this notice. Furthermore, as previously stated, the Defendant County of Ingham sent the notice to an incorrect address and could not state where the County obtained this address.

Lastly, the parties concede that there was no notice given to Plaintiff of a second opportunity to redeem the property. There is a second redemption period which follows the vesting of the title in the state and ends prior to the first Tuesday in November following the vesting. M.C.L. § 211.131c(1). A show cause hearing is scheduled for this second redemption period, and the county treasurer must notify the property owner of the hearing and proof of notice must be recorded with the register of deeds in the county in which the property is located. M.C.L. § 211.131e. However, the statute does not require notice of the second redemption period if the state-equalized-value of the property is less than $1,000. *Id.* Defendants claim that the property in issue is valued at less than $1,000 and, therefore, Plaintiff was not entitled to notice of the second redemption period.

 According to the Sixth Circuit, under Michigan law, tax title proceedings are " 'closely scrutinized and strictly construed.' " *United States v. Varani,* 780 F.2d 1296, 1302 (6th Cir.1986) (quoting *Adair v. Bonninghausen,* 305 Mich. 137, 141, 9 N.W.2d 35 (1943)). Additionally, " '[u]nless notice to redeem is served within the statutory period, the purchaser cannot assert title under his tax deeds.' " *Id.* Until proper notice is served, the party asserting the inadequate notice retains the right to redeem the property. *Varani,* 780 F.2d at 1304. *See also In the Matter of Sabec,* 137 B.R. 659, 667 (Bkrtcy.W.D.Mich.1992) (stating that until proper notice is served in strict compliance with the statute, "the [property] owner is under no legal obligation to redeem" and "[t]he failure of a tax purchaser to give due and proper notice will defeat his tax title." (citations omitted)); *City of Flint v. Takacs,* 181 Mich.App. 732, 739, 449 N.W.2d 699, 702 (1989)(failure to give record owner notice of right of redemption on land bid off to the state is noncompliance with M.C.L. § 211.131e; therefore, record owner's redemption rights remain intact against the title of the grantees of the State of Michigan deed).

This Court finds that there is substantial likelihood that Plaintiff will succeed on the merits of its claim. Defendant County of Ingham needs to give "reasonably calculated" notice pursuant to *Dow.* This Court believes that the County's efforts were not good enough. The County knew that notices to the Plaintiff had been returned and that a correct address was needed. Furthermore, with Plaintiff receiving thousands of pieces of mail a day, an address is needed that could be expected to reach the proper contact person at Conrail. It would have been easy enough and reasonable to expect the County to obtain a proper address from a well-known national corporation.

Although Defendants concede that Plaintiff did not receive notice of the second redemption period, Defendants claim that Plaintiff was not entitled to receive notice because the state-equalized-value of the property was less than $1,000. *See* M.C.L. § 211.131e. However, Defendants' argument fails in two ways. First, the real property in issue is not given any state-equalized-value due to Plaintiff's status as a railroad, an exempt organization. Therefore, there is no proof that the state-equalized-value of the property is less than $1,000. In fact, the regional Director of Operations for Conrail testified that the equipment on the property is valued at about $100,000.[1] Second, the Michigan Court of Appeals has held, and this Court agrees, that requiring due process only for property of a certain value is unconstitutional. *See Brandon Twp. v. Tomkow,* 211 Mich.App. 275, 535 N.W.2d 268 (1995). Moreover, it would be unconstitutional for organizations, such as churches and railroads, to be denied due process rights in tax sale proceedings because of their exempt status.

## 2. Irreparable Harm in the Absence of an Injunction

This Court agrees that "interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." *Pelfresne v. Village of Williams Bay,* 865 F.2d 877, 883 (7th Cir.1989). Moreover, real property is crucial to the functioning of Plaintiff's business.

## 3. Substantial Harm to Others

The granting of injunctive relief may harm Defendants Henry Hill and Hot Light Productions. Defendants Henry Hill and Hot Light Productions have expended time and money in maintaining the property, approximately $1,000 or more. However, this type of harm is compensable by money, which the Defendants would be entitled to if they prevail in this case.

## 4. The Public Interest

An overwhelming factor to be considered is the potential injury to the public if a preliminary injunction is not issued in this case. As Plaintiff has pointed out, the power equipment on the real property in issue controls automatic signaling, switching systems, and highway grade crossing protection devices for the CP North Lansing Interlocking. If the power equipment is not maintained properly, or if the power is shut off, there would be significant risk to the public at large, both personal injuries and property damage. The regional Director of Operations for Conrail testified that approximately twenty-eight trains per day, each being one to one-and-a-half miles long, depend on the signaling provided by the controls and equipment on the property in issue. Therefore, the public interest is best served by injunctive relief.

## Conclusion

For the foregoing reasons, the Court, balancing all of the relevant factors, holds that Plaintiff's motion for preliminary injunction should be granted. For the reasons stated on the record, Plaintiff will be required to post bond of $5,000 and will be prohibited from removing any personal property from the real estate without prior approval of this Court.

An Order consistent with this Opinion will be entered.

## ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiff's motion for preliminary injunction (docket no. 4) is **GRANTED.**

---

1. This value for the property was conceded by Defendants Hill and Hot Light Productions when they requested a bond in the amount of $100,000 to cover the value of the property. It should also be noted that these Defendants have only about a total of $1,000 invested in the purchase and maintenance of the property. They are demanding $3,500 per month rent from Plaintiff. Considering the small amount of special assessments owing, the obvious ability of Plaintiff to pay these assessments, and the value of property, there is considerable doubt that these Defendants ever believed that Plaintiff received the notices required by the statute and the Constitution.

IT IS FURTHER ORDERED that Defendants Henry Hill and Hot Light Productions are RESTRAINED from:

(1) Selling or leasing the real property located at 635 E. Grand River Avenue, Lansing, Michigan ("the property"), and any equipment, fixtures or personalty located thereon;

(2) Permanently or temporarily interrupting the electrical power supply to the equipment on the property;

(3) Operating, tampering or disturbing the equipment, fixtures or personalty located on the property; and/or

(4) Interfering with Plaintiff, its agents, assigns, and lessees' access to the property as often as is necessary to conduct routine maintenance of the equipment, to cut weeds, and to otherwise maintain the property.

IT IS FURTHER ORDERED that Defendant Lansing Board of Water and Light is RESTRAINED from shutting off the power to the property.

IT IS FURTHER ORDERED that Plaintiff post bond in the amount of $5,000 pursuant to Rule 65 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Plaintiff is prohibited from removing any personal property from the real estate without prior approval of this Court.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file an amended complaint (docket no. 18) is GRANTED. Plaintiff may file an amended complaint on or before December 6, 1996.