RENDERED:  DECEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0910-MR

LAWRENCE SMITH                                                    APPELLANT


APPEAL FROM WASHINGTON CIRCUIT COURT
v.        HONORABLE JANET J. CROCKER, SPECIAL JUDGE
ACTION NO. 10-CI-00117


SHEILA MURPHY SMITH AND
LEBANON MACHINE SHOP, INC.                               APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE:  Lawrence Smith (Larry) appeals from findings of fact, conclusions of law, and a judgment valuing the assets of Lebanon Machine Shop, Inc. (LMS) for purposes of compensating Larry for his interests in the company's stock and real property.  As an initial matter, we conclude that this appeal is not moot even though Larry has since transferred his interests in the stock and real

property owned by LMS to the other principals. However, we further find that the trial court did not clearly err in determining the value of LMS's inventory, and that Larry failed to show how he preserved the trial court's findings concerning the tax liability. Hence, we affirm the judgment.

This case originated as a dissolution-of-marriage action between Larry and Sheila Smith. The petition was filed July 10, 2010, and an interlocutory decree of dissolution was granted on November 22, 2010. The decree reserved all other issues for later adjudication. The most significant dispute concerned the valuation and division of the marital interest in LMS, a closely-held, family-owned-and-operated business. Larry and his two younger brothers, Daniel Smith (Dan) and Patrick Smith (Pat), each owned a one-third interest in LMS and its affiliated companies. Larry also owned a one-half interest in some of the real estate on which LMS operates.

Initially, Sheila and Larry agreed to a public sale of all of their real and personal property, including the real property on which LMS's business is located and LMS's physical assets. Dan and Pat objected, voting against the sale at an LMS board meeting. Thereafter, on July 25, 2012, LMS filed a motion to intervene in the dissolution action. The trial court granted the motion on the same date.

During the pendency of this action, the relationship between Larry, Dan, and Pat disintegrated. Dan and Pat accused Larry of removing equipment and records from LMS for the purposes of operating a competing business. On July 2, 2013, LMS filed a motion for an injunction against Larry, which the trial court granted on July 11. Among other things, the injunction prohibited Larry from coming on the premises of LMS and from removing records and equipment from LMS. Following issuance of the injunction, LMS filed a motion for contempt based on Larry's failure to comply with the injunction's requirement to return equipment. The trial court declined to rule on the motion, concluding that the issues involved could be determined as part of the valuation of Larry's interest in LMS.[1]

From the end of 2013 through 2016, the parties attempted to engage in arbitration, which was unsuccessful. The matter was scheduled for a bench trial, which took place over several days in April, June, and July of 2017. Thereafter, on April 23, 2018, the trial court entered findings of fact, conclusions of law, and a judgment on the disputed issues. Larry filed a motion to alter, amend, or vacate

---

[1] Subsequently, additional parties were joined as third-party respondents. The additional parties included Dan and his wife Diane Smith, affiliated companies LMS Crane Services, LLC and Larry and Dan Smith Rental, and Peggy Smith, Larry's current wife. An additional intervening complaint was filed by Chastity and Johnathan Renfro, the daughter and son-in-law of Sheila and Larry Smith.

the April 23, 2018, judgment, alleging several erroneous findings.  In its amended findings issued on July 9, 2018, the trial court noted the parties' agreement that it had erroneously included the value of certain escrow funds in its valuation of LMS.  But by separate order also issued on July 9, the trial court denied the other grounds raised in Larry's CR[2] 59.05 motion.

In pertinent part, the trial court valued the assets of LMS as of December 31, 2013, which the parties agreed was the applicable date for valuation.  Those findings are summarized below:

| | |
|---|---|
| Cash | 94,599.00 |
| Accounts Receivable | 253,787.00 |
| Inventory | 250,000.00 |
| Due From:   Lebanon Lumber & Hdwe | 286,588.00 |
| Lebanon Lumber & Hdwe | 40,000.00 |
| DLP, LLC | 202,950.00 |
| Marion Co. Metals, LLC | 232,052.00 |
| Machinery and Equipment | 750,000.00 |
| Building & Improvements | 78,100.00 |
| Accounts Payable | -7,267.00 |
| Other Current Liabilities | -15,462.00 |
| Loans Due Shareholders | -148,988.00 |
| Total Net Assets | 2,017,359.00 |

Based upon this calculation, the trial court determined that the value of Larry's one-third interest in LMS was $672,453.00.  The trial court directed that Dan and Pat pay Larry this amount, representing the value of his shares as of

---

[2] Kentucky Rules of Civil Procedure.

December 31, 2013, with interest retroactive to the following day. The trial court also made findings on other claims which are not the subject of this appeal.

Thereafter, on May 9, 2019, the trial court entered supplemental findings of fact, conclusions of law, and a final judgment dividing the marital assets and debt, including the marital interest in LMS. Larry now appeals from portions of the judgment valuing his interest in LMS. Additional facts will be set forth below as necessary.

Larry raises two issues involving the trial court's valuation of LMS's assets. First, he argues that the trial court erred in its valuation of LMS's inventory. And second, Larry contends that the trial court erroneously failed to include the tax liability from LMS's post-2014 distributions in its valuation of his interest.

As an initial matter, LMS argues that this appeal became moot after Larry transferred all of his one-third interest in LMS. On September 27, 2019, LMS paid Larry $1,059,183.71 in exchange for: (1) Larry's transfer of all his stock in LMS; and (2) a deed conveying Larry's one-half interest in the underlying real estate. Since he no longer has any interest in the company or real property, LMS argues that those transactions cannot be modified and, thus, no relief can be granted on appeal.

LMS relies heavily on *AEP Industries, Inc. v. B.G. Properties, Inc.*, 533 S.W.3d 674 (Ky. 2017). That case involved a dispute concerning the enforcement of an agreement giving AEP an option to purchase real property which it leased from B.G. AEP sought to exercise its purchase option, but the parties could not agree on the value of the property. Consequently, AEP brought an action seeking specific performance of the agreement. *Id.* at 676.

After finding the option agreement to be enforceable, the circuit court directed the parties to name an appraiser to value the property. AEP was satisfied with the price set by the appraiser, but B.G. argued that it was insufficient. The circuit court ultimately accepted the appraisal and entered a judgment ordering specific performance of the option agreement. Immediately thereafter, B.G. executed the deed acknowledging the receipt from AEP of the stated consideration. AEP promptly recorded the deed, and B.G. did not record a *lis pendens* notice to signify its retention of ongoing litigative interest in the property. B.G. also filed a notice of appeal but did not seek a supersedeas bond to stay enforcement of the judgment. *Id.* at 677-78.

On appeal, this Court reversed, finding that the circuit court failed to adequately address the threshold issue of whether AEP had complied with the option agreement and was entitled to specific performance. But on discretionary review, the Kentucky Supreme Court held that B.G.'s appeal was rendered moot

-6-

by its conveyance of the property to AEP by general warranty deed without reservation and its acceptance of the stated consideration for the transfer. *Id*. at 678. The Court explained:

> BG did not preserve its objections to the trial court's order of specific performance of the Option Agreement by posting a supersedeas bond pursuant to CR 62.03, CR 73.04, and CR 73.06. Nor did BG avail itself of an alternative means of staying the order by seeking immediate relief from the Court of Appeals staying the matter pending appellate review. Instead, BG transferred the property. As we held in *Green Valley Environmental Corp. v. Clay*, citing Section 111 of Kentucky's Constitution, the Court of Appeals has the power "to grant a stay pending appeal in order to maintain the status quo of the case pending before it on review." 798 S.W.2d 141, 143-144 (Ky. 1990) (*citing Crady v. Cranfill*, 371 S.W.2d 640 (Ky. 1963)). In summary, BG sought none of the available remedies that would have enabled it to avoid the immediate enforcement of the trial court's order and defer, at least temporarily, the conveyance of the property for what it regarded as an improperly determined price.
>
> While not dispositive, the opinions of our predecessor Court in *Rose v. Cox*, 297 Ky. 458, 179 S.W.2d 871 (1944), and *Sedley v. Louisville Trust Co.*, 419 S.W.2d 531, 532 (Ky. 1967), are instructive even though they contain important factual differences. Those cases establish that when property is sold to a third party pursuant to a judicial sale ordered by the trial court, in the absence of a supersedeas bond or other stay of execution, a subsequent determination by an appellate court that the order directing the sale was erroneous does not void the sale. "Where the court has jurisdiction of the parties and the subject matter of the suit, and has statutory authority to decree the sale, a subsequent reversal of the judgment decreeing the sale is a mere

> declaration that the judgment is erroneous, but does not render it void." *Rose*, 179 S.W.2d at 872. "The fact that the judgment ordering the sale of the property was not superseded prevents us from granting [the Appellant] the relief to which she is allegedly entitled" and the case is thereby moot. *Sedley*, 419 S.W.2d at 533.

*Id.* at 679-80 (internal footnotes omitted).

The Supreme Court determined that B.G.'s conveyance of the property and acceptance of consideration was inconsistent with its argument that the order compelling specific performance was erroneous. *Id.* at 680. The Court also noted that the delivery and acceptance of the deed extinguished any rights under the contract for conveyance of the property. *Id.* at 681. Under the circumstances, the Supreme Court concluded that B.G.'s appeal was moot. No further relief could be granted because B.G. failed to preserve its objections to the circuit court's final order. *Id.* at 682-83.

The Court in *AEP* distinguished a judgment ordering specific performance of a real estate option contract from a judgment awarding a fungible sum of money. In the case of the latter, a defendant is not required to post a supersedeas bond but may simply pay the judgment without forfeiting his right of appeal. *Id.* at 682. But where the *res* subject to the order compelling specific performance is real estate, the Court held that the defendant's failure to seek a stay of the judgment precludes any subsequent relief setting aside the conveyance. *Id.*

In this case, Larry does not challenge the order of the trial court directing him to transfer his interest in the assets of LMS, including the real property. Rather, he simply disputes the trial court's valuation of that interest. The relief sought would not require unwinding of any conveyances, but merely a re-calculation of the appropriate amount to be paid for his interests. Thus, unlike in *AEP*, the issues raised in Larry's appeal do not implicate any laws relating to the transfer of real property. Therefore, we conclude that this appeal is not moot.

As noted above, Larry challenges the trial court's factual findings relating to two aspects of its valuation of the assets of LMS. As with any matter heard before a trial court outside the presence of a jury, we review the trial court's factual findings for clear error. CR 52.01. *See also Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409 (Ky. 1998). "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). Substantial evidence constitutes proof of facts which have sufficient probative value to permit a reasonable person to reach a factual determination. *God's Ctr. Found. Inc. v. Lexington-Fayette Urban County Gov't*, 125 S.W.3d 295, 300 (Ky. App. 2002).

The testimony at trial concerning the value of LMS's inventory was the subject of much debate, but little definitive evidence. LMS did not maintain a schedule of its inventory. On its tax returns for the applicable period, LMS valued

its inventory at $31,677.00, but the parties agreed that this amount was not an accurate representation of the inventory's value as of December 31, 2013.

Larry testified that, in 2012, he and his current wife conducted a partial "hand count" of the inventory. He submitted a summary of that count, valuing the inventory at approximately $670,000.00. Based on that partial calculation, he extrapolated the total value of the inventory to be $1,000,000.00, which he acknowledged should be reduced by 25% to $750,000.00. However, the trial court noted that Larry did not know the quantities on hand nor did he provide a basis for his pricing.

David Issacs was responsible for ordering parts and assigning duties at the LMS shop. He testified that inventory was at "an all-time low" in 2013 due to the ongoing dispute between the brothers. He also noted that the inventory contained many old items, some of which dated to before Larry and Dan bought the business in the 1980s. While he knew the cost of the individual items, Issacs admitted that he did not know the quantities on hand. He estimated that $500,000.00 was "pretty close" to the replacement cost of the inventory. The court found that this was not an appropriate method of valuing the inventory.

LMS presented the expert testimony of Calvin Cranfill (Cranfill), a CPA and business valuation expert. Cranfill testified that he viewed the inventory of LMS but did not attempt to undertake a count or obtain specific pricing. He

agreed with Issacs that much of the inventory included older items for which it was difficult to determine an exact value. Cranfill testified that, even if a full count of the inventory were practical, there was no reliable way to set a value for older or obsolete items. For purposes of determining LMS's book value, Cranfill adopted the recommendation of Pat and Dan that the inventory should be valued at $100,000.00.

Cranfill further testified that, in the commercial, industrial, and machinery equipment industry, companies doing between $1 million and $3 million in sales have an average inventory of 16.1% of total assets. Based on this standard, Cranfill stated that LMS's inventory value would average as high as $285,000.00. Cranfill went on to testify that he did not believe that this standard was applicable to determine the value of LMS's inventory. First, he again noted that the age of the inventory would likely decrease its overall value. He also observed that LMS had a high rate of turnover in its newer inventory but kept its older, unsold inventory on hand. And second, he noted that the principals of LMS operated the business very conservatively. Until 2014, they did not take "normal levels of salary"; they frequently re-invested income to build up equity in the assets; and they incurred little or no debt on the business. Consequently, he opined that the ratio would overstate the actual value of the inventory. Based on these

factors, Cranfill concluded that the inventory should not be valued based on the industry standard, but using the lower $100,000.00 figure offered by Dan and Pat.

Despite this testimony, the trial court concluded that the "industry standard" identified by Cranfill was the only reliable method. Based on the five-year average of gross sales, the trial court valued the inventory at $250,000.00. Larry argues that the trial court had no basis to adopt this standard as a basis to determine the value of the inventory. Rather, he contends that the only reliable basis was his partial hand count valuing the inventory at $750,000.00.

In its order denying Larry's CR 59.05 motion, the trial court noted that ratio analysis is an accepted method in the valuation of a business enterprise. The court also observed that ratio analysis may be especially useful to value the stock of a closely-held company such as LMS, "which by definition does not have a fair market value, since a market wherein a willing buyer will meet a willing seller, neither under any compulsion, generally does not exist." (Quoting *Levene v. Levene*, 392 A.2d 621, 623-24 (N.J. 1978)). While we generally agree with this analysis, we note that the application of such a ratio must be supported by expert testimony demonstrating its applicability to the case at hand.

But as pointed out in *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky. 2009), "[t]he valuation of a business is complicated, often speculative or assumptive, and at best subjective." *Id.* at 311. In cases where there is no definitive testimony

concerning the value of an asset, the trial court has some latitude to fix a value within the range of competent testimony. *Roberts v. Roberts*, 587 S.W.2d 281, 283 (Ky. App. 1979). Here, the trial court did not find Larry's valuation of the inventory at $750,000.00 to be credible or accurate. Similarly, the trial court found that the proposed $500,000.00 "replacement value" was not an appropriate method to value the inventory.

On the other hand, the trial court also believed that the $100,000.00 value offered by Dan and Pat and adopted by Cranfill did not accurately reflect the value of the inventory. Given the absence of any definitive evidence, we cannot find that the trial court clearly erred by using the $250,000.00 amount reached through the application of the ratio. Although we do not endorse the use of such ratios without adequate foundation, we cannot find that the evidence compelled a valuation of the inventory greater than this amount. Under the circumstances, the trial court did not clearly err by valuing the inventory at $250,000.00.

Larry next argues that the trial court failed to include his tax liability from distribution in its valuation. LMS is a subchapter S corporation, meaning that it pays no corporate income taxes as an entity. Instead, its income or losses are divided among its shareholders and the shareholders then report the income or loss on their personal income tax returns. *See Chamberlin v. Chamberlin*, No. 2009-

-13-

CA-001256-ME, 2010 WL 668792, at *2 n.2 (Ky. App. Feb. 26, 2010) (citing 47B C.J.S. *Internal Revenue* §§ 374 to 378 (2009)).

On June 27, 2014, the trial court entered an order directing that LMS cease distribution of income to its shareholders. However, LMS continued to issue Schedule K-1 forms to each of the shareholders, reporting each partner's share of taxable distributions as ordinary income. Larry's CPA testified that Larry was issued K-1s allocating to him $251,924.00 in income for which he paid taxes at the personal rate. Larry contends that this tax liability represents a windfall to Pat and Dan, since they were able to raise their salaries from LMS to compensate for the cessation in distributions. As a result, he argues that the trial court should have included the value of these withheld distributions in its valuation of LMS to compensate for the tax liability which he incurred.

The trial court did not address the tax liability, but "surmised that [Larry] may be able to file amended returns based on the retroactive effective date of the purchase of his shares." "Findings of Fact, Conclusions of Law And Judgment," April 23, 2018, p.11 n.15. Larry argues that there was no evidence supporting this conclusion. Rather, he contends that the trial court was obligated to address this issue in its findings determining the value of LMS. LMS responds that the trial court accounted for the tax liabilities by making the sale of Larry's shares retroactive to January 1, 2014, and awarding him interest from that date. It also

-14-

contends that the reported distributions and retained income increased the value of LMS to Larry's benefit.

We are not clear how Larry preserved this issue for review. An appellant's brief must include "ample supportive references to the record and citations of authority pertinent to each issue of law and [] shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). Larry's brief only includes a general statement that this issue "was properly preserved for appeal," without any citation to the record. We also note that Larry did not raise the issue in his CR 59.05 motion, nor did he ask the trial court to make additional findings on this issue pursuant to CR 52.02.

It is well-established that a final judgment shall not be set aside because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless the failure is brought to the attention of the trial court by a written motion pursuant to CR 52.02. CR 52.04. In the absence of such a motion, this Court must presume that the evidence presented at trial supports the trial court's conclusions. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). Here, the trial court concluded that it was not necessary to account for the K-1 distributions because Larry has the option of filing amended tax returns. Since

Larry fails to show that he requested more specific findings or that this conclusion was clearly erroneous, we decline to address the issue further.

Accordingly, we affirm the findings of fact, conclusions of law, and judgment of the Washington Circuit Court with respect to its valuation of the assets of Lebanon Machine Shop, Inc.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Lloyd C. Chatfield, II
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE LEBANON
MACHINE SHOP, INC.:

E. Gregory Goatley
Springfield, Kentucky